2002 UT App 105

**Eva M. CAFFERTY, et al., Defendants and Appellants,**

v.

**Dwight HUGHES, et al., Plaintiffs and Appellees.**

**No. 20000866–CA.**

Court of Appeals of Utah.

April 11, 2002.

Rehearing Denied May 2, 2002.

Charles M. Bennett, Blackburn & Stoll LC, Salt Lake City, for Appellants.

Evan A. Schmutz and Lance N. Long, Hill Johnson & Schmutz, Provo, for Appellees.

Before Judges BILLINGS, GREENWOOD, and ORME.

## OPINION

BILLINGS, Associate Presiding Judge.

¶ 1 This case involves a dispute among five siblings over the distribution of a trust created by their parents. The trial court ordered an equal distribution of the trust, subject to various offsets. This appeal and cross appeal followed. We affirm.

## BACKGROUND

¶ 2 In 1974, McClure Hughes and his wife Helen Hughes, the parents of the litigants in this action, created a trust (1974 Trust). The 1974 Trust agreement required that upon the death of either Helen or McClure, the trust estate would divide into two separate trusts, designated as the "Marital Trust" and the "Family Trust." The Marital Trust remained revocable and subject to amendment by the surviving trustor during his or her lifetime. The Family Trust became an irrevocable trust and not subject to amendment after either Helen's or McClure's death.

¶ 3 The 1974 Trust also designated who would act as trustees through specified priorities. According to its terms, McClure and Helen were, as a first priority, trustees together. After either of them died, the second priority. trustees would consist of the survivor together with their son Joseph M. Hughes (Joe) and son-in-law Robert Clifford Bennett (Robert), who is the husband of daughter Linnea Hughes Bennett (Linnea). The next priority of trustees would consist of all five children acting by majority vote.

¶ 4 McClure and Helen acted as joint trustees until Helen's death in September of 1978. Her death invoked the second priority of trustees, meaning that Robert, Joe, and McClure were then authorized to act as trustees.

¶ 5 In February of 1979, McClure married Leora T. Hughes. In October of 1979, at McClure's request, Robert formally resigned as trustee. Also at McClure's request, McClure's daughter Eva M. Cafferty (Rikki) began to serve as a third "trustee" in the place of Robert. In a document entitled "Trustee Resignation" Robert resigned as trustee and purported to "delegate and assign McClure Hughes and Joseph McClure Hughes and [Rikki] Cafferty as successor trustees."

¶ 6 In 1987, McClure, Joe, Rikki, and Leora all executed an "Amendment and Restatement of the McClure Hughes Family Inter Vivos Revocable Trust Agreement" (1987 Amendment). In the 1987 Amendment, Joe and Rikki were ostensibly declared to be co-trustees of both the Marital Trust and the Family Trust. The 1987 Amendment also provided for a new order of preference for trustees. Specifically, during the lifetime of McClure, Joe and Rikki were to act unanimously as trustees. Then "[a]fter the death

of McClure Hughes, any Trustee may resign as set forth herein. Any Trustee may be removed and any successor Trustee shall be appointed by the majority vote of the children of McClure Hughes living from time to time."

¶ 7 Thereafter, the trial court found that "Linnea attempted on many occasions to inquire of [Joe] and [Rikki] regarding trust documents, trust properties and trust issues and was constantly rebuffed."

¶ 8 On November 7, 1987, Rikki and Joe executed an agreement between themselves regarding trustee fees. The trial court found that this agreement was not discussed with McClure.

¶ 9 McClure's mental faculties noticeably began to slip sometime in 1992. In 1993, Joe and Rikki, purporting to act as trustees and using trust funds to pay legal fees, sought to have Joe named as conservator for McClure in a proceeding in California. The trial court found "[t]he principal motivation ... for the conservatorship action was a concern that substantial funds had been taken from trust accounts and placed into joint accounts of McClure Hughes and Leora T. Hughes." However, just prior to initiating the California proceeding, Joe and Rikki's counsel explained to them that money taken from trust funds and placed into McClure and Leora's joint accounts legally belonged to McClure when he received it and to both McClure and Leora when deposited in their joint accounts. Trust funds in the amount of $5,230.00 were expended in bringing the California action.

¶ 10 Linnea initiated another conservatorship proceeding in Utah. Eventually, a Utah court appointed Leora Hughes as conservator for McClure.

¶ 11 McClure died on May 2, 1995. A month later, Linnea and her brothers Dwight Hughes and John Hughes asserted their right to act as trustees of the Family and Marital Trusts. The trial court found that

[a]ttempts to assume duties as trustee and manage trust assets by majority vote of the remaining children have continued since that time. [Joe] and [Rikki] ... have steadfastly refused to allow their siblings to participate as trustees or to acknowledge any duty other than to continue to manage the entire fund as joint trustees.

¶ 12 In October of 1996, in a hearing before Judge Maetani, the parties stipulated to the appointment of an independent CPA. The CPA was to manage the trust properties and funds and do an accounting of all trust records.

¶ 13 On March 13, 1998, Judge Maetani signed a declaratory judgment that concluded that the 1974 Trust was a valid and existing trust and that the five Hughes children were the trustees and were to act jointly and by majority vote. In addition, the court retained jurisdiction to resolve any disputes that could not be resolved by a majority vote of the trustees.

¶ 14 In an order dated April 22, 1999, Judge Harding concluded that "[t]he only remaining issue [regarding distribution of the trust] ... is whether any beneficiaries should have their portion of the equal division offset for expenses owed to the estate." The court then ordered an evidentiary hearing on the matter.

¶ 15 The hearing was set for September 24, 1999, and due to a scheduled rotation of divisions in the Fourth District Court, occurred before Judge Taylor. The day before the hearing was to begin, Dwight and John withdrew their pending motions before the court.

¶ 16 Following the hearing on offsets, the trial court made numerous findings of fact and conclusions of law. The court found that the 1987 Amendment was ineffective in its attempt to change the priority of trustees for the Family Trust. Accordingly, at all times following the resignation of Robert, the appropriate trustees for the Family Trust were the five children, acting by majority vote, and Rikki and Joe's actions as sole trustees were unauthorized. The trial court found that "within a few weeks of the death of McClure Hughes, on June 6, 1995, the surviving children did attempt to exercise authority, however [Joe] and [Rikki] refused to acknowledge their siblings' claims and continued to exercise control until removed by order of this Court."

¶ 17 Specifically regarding Rikki and Joe, the trial court found that they "disregarded the plain language of all of the trust documents regarding priority of ·trustees," and except for only one unhelpful exception, "failed to regularly account to trust beneficiaries as required by statute [Utah Code Ann. § 77–7–303]."

¶ 18 Based on the evidence presented, the trial court ordered the following offsets. First, that Rikki and Joe would bear their own attorney fees and their distributive shares would be taxed with the court costs of Linnea, Dwight, and John, as well as Linnea's attorney fees. The court lowered Linnea's attorney's rate from $175 to $150 per hour. It also considered but denied awarding John attorney fees for his counsel who participated earlier in the litigation but who withdrew before the scheduled June hearing on offsets. In regard to the conservatorship proceedings, the court ordered that each of the children would bear their own attorney fees and costs, and accordingly recaptured the trust funds that were expended by Rikki and Joe in that action by charging the costs equally against their distributive shares. Finally, the trial court ordered the entire trust to bear the cost of the independent accountant.

¶ 19 After determining the corresponding offsets, the trial court ordered the corpus of the trusts to be distributed to the beneficiaries. This appeal followed.

## ANALYSIS

### I. Judgment on the Pleadings

■ ¶ 20 Rikki and Joe first argue the trial court erred in not granting their motion for judgment on the pleadings at the beginning of the September 1999 hearing. Specifically, they argue that because Dwight and John withdrew their· pending motions immediately before the hearing and their counsel moved the court for an immediate equal distribution, the court should not have held a hearing on offsets.

¶ 21 Rule 12(c) of the Utah Rules of Civil Procedure allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay·the trial." Utah R. Civ. P. 12(c). The 1999 hearing, however, was held pursuant to an earlier court order, and its sole purpose was to determine offsets to the beneficiaries' relative distributive shares. Therefore, this proceeding was not in the correct procedural posture for a rule·12(c) motion. In addition, both parties agreed that the lack of any pending pleadings imposed no prejudice because all of the parties were familiar with what offsets were at issue.[1]

¶ 22 Accordingly, we hold that a rule 12(c) motion was procedurally incorrect and therefore was properly denied by the trial court.

### II. Disputes over Attorney Fees

#### A. Linnea's Attorney Fees

##### 1. Correctness of Awarding Linnea's Attorney Fees

■ ¶ 23 Rikki and Joe argue the trial court erred in awarding Linnea's attorney fees incurred in this litigation. "The general rule in Utah, and the traditional American rule, subject to certain exceptions, is that attorney fees cannot be recovered by a prevailing party unless a statute or contract authorizes such an award." *Stewart v. Utah Pub. Serv. Comm'n*, 885 P.2d 759, 782 (Utah 1994). "However, in the absence of a statutory or contractual authorization, a court has inherent equitable power to award reasonable attorney fees when it deems it appropri-

---

1. The record is clear that Rikki and Joe's counsel, Mr. Bennett, agreed that he could proceed with the hearing.

    Judge Taylor: "Well, let me just ask you. Are any of these, any of these claims [for offsets] a surprise to your client or to you? These are all, all—"

    Mr. Bennett: "These are all items, Your Honor, that in one way or another are addressed in the report that was done by Mr. Shields [the independent CPA].

    Judge: Uh-huh (affirmative).

    Mr. Bennett: So I think it would not be fair to say that we were surprised. I think that would just not be correct.

    Judge: Okay. And, and my view is that these claim[s] are within the purview of Judge Harding's order. I think [they are] legitimate claims.

ate in the interest of justice and equity." *Id.* This includes "the inherent power to award attorney fees when a beneficiary sues a trustee for violation of the trust and obtains a recovery for all other beneficiaries whose rights were also violated by the trustee." *Id.* at 783.

¶ 24 Based on this exception, the award of fees was within the trial court's discretion and is supported by the record. Linnea sued Joe and Rikki, acting as trustees, "for violation of the trust" and obtained "a recovery for all other beneficiaries whose rights were also violated by the trustee[s]." *Id.* The only relevant finding is whether Linnea obtained a recovery based on a violation of the trust.[2] The record is clear that she did. Not only was the award of trustee fees that Rikki and Joe paid themselves substantially lowered, but also the costs associated with the California conservatorship proceeding were recaptured and charged against Rikki and Joe's distributive shares. Therefore, we affirm the trial court's award of Linnea's attorney fees.

### 2. Amount of Linnea's Attorney Fees Award

¶ 25 On cross appeal, Linnea argues the trial court erred in reducing the amount of her attorney fees. Specifically, she argues that because evidence was submitted regarding the reasonableness of Mr. Schmutz's hourly rate, and because no party objected to the reasonableness of his fee, the trial court improperly reduced Linnea's attorney's hourly rate.

¶ 26 "Calculation of reasonable attorney fees is in the sound discretion of the trial court, and will not be overturned in the absence of a showing of a clear abuse of discretion." *Dixie State Bank v. Bracken,* 764 P.2d 985, 988 (Utah 1988) (citation omitted). "A trial court's discretion in determining the amount of a reasonable attorney fee 'arises from the fact that it is in a better position than an appellate court to gauge the quality and efficiency of the representation and the complexity of the litigation.'" *Valcarce v. Fitzgerald,* 961 P.2d 305, 317 (Utah

1998) (quoting *Richard Barton Enters. v. Tsern,* 928 P.2d 368, 380 (Utah 1996)). In determining a reasonable fee, trial courts are instructed to answer four questions:

1. What legal work was actually performed?
2. How much of the work performed was reasonably necessary to adequately prosecute the matter?
3. Is the attorney's billing rate consistent with the rates customarily charged in the locality for similar services?
4. Are there circumstances which require consideration of additional factors, including those listed in the Code of Professional Responsibility?

*Dixie,* 764 P.2d at 990 (footnotes omitted). In this analysis, "what an attorney bills . . . is not determinative." *Id.* "The appropriateness of the work actually performed and of the attorney's billing rate is evaluated before a reasonable fee is set." *Id.* Accordingly, "[t]he trial court is not bound by the fees requested in the claimant's affidavit. . . ." *N.A.R., Inc. v. Marcek,* 2000 UT App 300, ¶ 11, 13 P.3d 612. In addition, the evidence regarding a reasonable attorney fee does not have to be disputed in order for a trial court to award a lower amount. *See Beckstrom v. Beckstrom,* 578 P.2d 520, 524 (Utah 1978) ("Even though [the reasonableness of the attorney fee] evidence is undisputed, the trial judge was not necessarily compelled to accept such self-interested testimony whole cloth and make such an award; and in the absence of patent error or clear abuse of discretion, this court will not disturb his findings or judgment." (footnote omitted)).

¶ 27 In this case, the trial court specifically set forth the factors to be considered when determining a reasonable fee and stated that it would "consider each of the requests for fees in accordance with this standard." The trial court then found that Mr. Schmutz's and his associate's rates "substantially exceed[ed] that of Mr. Buckley[3] ($100.00 per hour)." Consequently, the trial court found "that the work and time expended by Mr. Schmutz were reasonable although the hourly rate

---

**2.** Accordingly, we need not reach Rikki and Joe's challenges to other findings of fact.

**3.** Mr. John Buckley was Linnea's previous counsel.

expressed is slightly excessive." Accordingly, even though Mr. Schmutz's affidavit was undisputed, the trial court did not abuse its discretion in lowering his hourly rate when determining a reasonable fee.

### B. John's Request for Attorney Fees

¶ 28 John argues the trial court exceeded its discretion in denying him attorney fees because his supplemental affidavit and invoices copiously detail the fees in accordance with Utah law. "A party who requests ... attorney fees has the burden of presenting evidence sufficient to support an award." *Cottonwood Mall v. Sine,* 830 P.2d 266, 268 (Utah 1992). In the present case, the trial court denied John's initial request for fees because his counsel's (Mr. Carlile) affidavit failed to specify an hourly rate or describe the nature of the work performed. However, Mr. Carlile submitted a supplemental affidavit and invoices detailing the hours spent, rate charged, and nature of the work performed. Additionally, Mr. Carlile attested the rate charged was reasonable.

¶ 29 Although the trial court acknowledged that the supplemental affidavit and invoices provided much more detail about the work done, the court denied John's supplemental request for fees. The court's rationale for doing so was that the complexity of the trial was "radically increased" by the self-representation of John following Mr. Carlile's withdrawal for undisclosed reasons and that pro se parties are ordinarily not entitled to fees.

¶ 30 This case involves an award of attorney fees on an equitable basis. Thus, the trial court has greater discretion to deny attorney fees. *See Saunders v. Sharp,* 840 P.2d 796, 809 (Utah Ct.App.1992). The trial judge who made the fee award observed that Mr. Carlile's withdrawal negatively impacted the proceedings. Specifically, Dwight and John filed numerous motions which accomplished little and burdened the parties. Additionally, Linea was forced to bear the added expenses of a continuance necessitated by Mr. Carlile's withdrawal.

¶ 31 Because the court supported its denial by finding Mr. Carlile's withdrawal, for undisclosed reasons, "radically increased" the complexity of the trial and burdened the other parties, we conclude the trial court acted within its discretion in denying fees to John.

### III. Trust Expenses

#### A. Trustee Fees for Rikki and Joe

##### 1. Correctness of Awarding Trustee Fees to Rikki and Joe

¶ 32 In their cross appeal, Linnea, John, and Dwight argue the trial court erring in finding that Rikki and Joe should be awarded any trustee fees. At the outset, we note that trial courts have the authority to review trustee fees. *See* Utah Code Ann. §§ 75–7–201(1) (1993); 75–7–206 (1993).

¶ 33 In this case, it is clear that although the trial court found that Rikki and Joe acted partially without authority and in some cases against the purpose of the trust, the trial court specifically found that Rikki and Joe did serve lawfully as trustees of the marital portion of the trust from 1987 until the death of their father. Therefore, it was not outside of the trial court's discretion to award a reasonable trustee fee to both Rikki and Joe.

##### 2. Amount of Trustee Fees for Rikki and Joe

¶ 34 Rikki and Joe argue the trial court erred in reducing the amount of their trustee fees. The 1974 Trust was silent as to the issue of trustee fees and the 1987 Amendment provided that a "[t]rustee shall be entitled to a reasonable fee, which may be waived wholly or partially, for trustees' services, commensurate with fees charged by trustees for similar services." The trial court accepted evidence regarding trustee fees in the form of letters of the testator, a letter between Rikki and Joe, as well as testimony from Rikki and Joe.

¶ 35 According to the trial court, the trustor's letters were the best evidence of reasonable trustee fees. "The best, indeed the only, real evidence of fees intended to be paid to the trustees is found within the let-

ters written by [Rikki] and signed by McClure Hughes . . . ."

¶ 36 " '[T]he fact finder is free to weigh . . . conflicting evidence presented and to draw its own conclusions.' " *Valcarce v. Fitzgerald*, 961 P.2d 305, 314 (Utah 1998) (quoting *State v. Pierce*, 722 P.2d 780, 782 (Utah 1986)). We therefore affirm the amount awarded as trustee fees.

### B. California Conservatorship Proceeding Expenses

¶ 37 Rikki and Joe argue the trial court erred in refusing to allow trust funds to pay Joe an extraordinary trustee fee and attorney fees associated with the California conservatorship action. They claim the denial resulted from the trial court's erroneous finding that the proceeding was not consistent with the purpose of the trust.

¶ 38 Regarding that proceeding, the trial court found that "[t]he action appears to have been grounded in a concern over possible dissipation of trust funds by McClure Hughes' second wife, Leora Hughes." Significantly, the trial court found that the 1987 Amendment "was specifically intended to provide for the care of Leora Hughes."

¶ 39 The trial court found that "the efforts of [Joe] in attempting to become conservator for his father in 1993 were motivated by a desire to recapture funds from Leora T. Hughes, a purpose not consistent with the express purpose of the trust." We hold that the trial court did not abuse its discretion in finding that the California conservatorship proceeding was not consistent with the purpose of the trust and accordingly denying the use of trust funds to pay for associated expenses.

### C. Independent CPA Fee

¶ 40 On cross appeal, Linnea, John, and Dwight argue the trial court erred in charging the entire trust for the independent CPA's accounting services. Specifically, they argue that the trial court should have charged only Rikki and Joe's shares because they contend the independent CPA's services were necessitated by Rikki and Joe's misdeeds as trustees, including their failure to provide the beneficiaries with accountings.

¶ 41 The trial court found the fee "to be a reasonable and necessary fee for investigation and management of trust funds and assets, chargeable to all parties to this litigation." Because no evidence was presented as to what portion of that fee was due to Rikki and Joe's improper actions, and because both parties stipulated to the appointment of an independent accountant, it was not an abuse of discretion for the trial court to charge the entire fee to the trust.

### IV. Evidence of Siblings Being Unqualified to be Trustees

¶ 42 Finally, Rikki and Joe argue the trial court improperly relied on the law of the case doctrine when it excluded evidence that Linnea, Dwight, and John were unqualified to serve as trustees. In March of 1998, Judge Maetani signed a declaratory judgment that found the five Hughes children were the trustees and were to act jointly and by majority vote. In addition, the court retained jurisdiction to resolve any disputes that could not be resolved by a majority vote of the trustees. When counsel for Rikki and Joe attempted to introduce evidence at the 1999 hearing on offsets that their siblings were unqualified to act as trustees, the trial court stated "Judge Harding and Judge Maetani have considered this case . . . . I'm not willing to go into the history of this Trust."

¶ 43 In this case, although the court retained jurisdiction over potential disputes, the issue of the identification of the trustees was resolved by the 1998 declaratory judgment. Therefore, under the law of the case doctrine, we conclude that the trial court was correct when it ruled that it need not revisit this issue. *See Salt Lake City Corp. v. James Constr., Inc.*, 761 P.2d 42, 44–45 (Utah Ct.App.1988).

¶ 44 In sum, we affirm on all issues raised in the appeal and cross appeal.

¶ 45 WE CONCUR: PAMELA T. GREENWOOD and GREGORY K. ORME, Judges.