2004 UT 22

**Dwight HUGHES, John Hughes, and Linnea Bennett, Plaintiffs and Respondents,**

v.

**Eva M. CAFFERTY and Joseph M. Hughes, Defendants and Petitioners.**

**No. 20020518.**

Supreme Court of Utah.

March 12, 2004.

Rehearing Denied April 14, 2004.

Evan A. Schmutz, Lance N. Long, Provo, for plaintiffs.

Charles M. Bennett, Salt Lake City, for defendants.

PARRISH, Justice:

¶ 1 In this case, we address the issue of when a court, sitting in equity, may award attorney fees to a beneficiary who sues a trustee for breach of trust. The trial court found that petitioners Joseph Hughes and Eva M. Cafferty ("Joe" and "Rikki") breached family trust agreements by wrongfully assuming the roles of trustees, improperly excluding their siblings from trust management, failing to regularly account to trust beneficiaries, and paying themselves excessive and unauthorized trustee fees. Consequently, the trial court ordered Joe and Rikki to repay various expenses to the trust. Using its inherent equitable power, the trial court also ordered Joe and Rikki to pay attorney fees for trust beneficiary Linnea Bennett ("Linnea").

¶ 2 The court of appeals affirmed the trial court's judgment, including its award of attorney fees to Linnea. Joe and Rikki sought and obtained certiorari review by this court. They challenge the standard employed by the court of appeals for evaluating the propriety of the trial court's award of attorney fees. They also challenge the result reached by the court of appeals under the facts and circumstances of this case. We affirm the decision of the court of appeals.

## BACKGROUND

¶ 3 This case arises from a dispute among five siblings regarding the administration and distribution of a trust estate established by their parents, McClure and Helen Hughes. In 1974, McClure and Helen created a trust that was to divide into two separate trusts upon either of their deaths. The two trusts were designated as the "Marital Trust" and the "Family Trust." The Marital Trust was subject to revocation or amendment until the deaths of both McClure and Helen, while the Family Trust was subject to neither.

¶ 4 The trust agreement specified the priority of trustees for the trusts. McClure and Helen had first priority to act together as trustees. Upon the death of either of them, priority passed to the survivor, their son Joe, and their son-in-law Robert Bennett to act by majority vote. Third priority was to all of the siblings collectively to act by majority vote.

¶ 5 When Helen died in 1978, the trust estate was divided into the Marital and Family Trusts, and trustee duties were assumed by McClure, Joe, and Robert Bennett. About a year later, McClure procured Robert Bennett's resignation as trustee and instated himself, Joe, and his daughter Rikki as trustees, although no formal amendment was made to the trust documents. By this time, McClure had married Leora Hughes ("Leora").

¶ 6 In 1987, McClure executed an "Amendment and Restatement" of the trust agreements ("1987 Amendment"). The 1987 Amendment ostensibly designated Joe and Rikki as co-trustees of both the Marital Trust and the Family Trust. Under the amendment, Joe and Rikki were to act unanimously as trustees during McClure's lifetime, unless one of them died or resigned, in which case the remaining individual would serve as sole trustee. The 1987 Amendment also provided that after McClure's death, "[a]ny Trustee may be removed and any successor Trustee shall be appointed by the majority vote of the children of McClure Hughes living from time to time."

¶ 7 Following the 1987 Amendment, Joe and Rikki acted as co-trustees of both trusts, and executed an agreement between themselves stating their intention to claim trustee fees for their services. This agreement was not discussed with McClure. At various times, Linnea asked Joe and Rikki for information about trust documents, trust properties, and trust issues, but she was consistently rebuffed.

¶ 8 In 1993, Joe and Rikki attempted to appoint Joe as conservator for McClure, who was edging into incompetence. They initiated a conservatorship proceeding in California, using money from the trusts to pay legal fees. The attempt was motivated primarily by a concern that McClure's second wife Leora would dissipate trust funds. Joe and Rikki had, on an earlier occasion, objected to Leora's use of Marital Trust funds and sought a return of those funds, despite legal advice that money taken from the Marital Trust and placed into the joint accounts of McClure and Leora legally belonged to McClure and Leora. The conservatorship proceeding in California was contested, and eventually, a Utah court appointed Leora as McClure's conservator.

¶ 9 Both McClure and Leora died in 1995. Within a few weeks of McClure's death, Linnea and her brothers Dwight Hughes ("Dwight") and John Hughes ("John") asserted their rights to participate as co-trustees in the management of the trusts. Joe and Rikki refused to recognize their siblings' claims, insisting they had exclusive rights to act as trustees. Unable to resolve the ongoing dispute, Linnea, Dwight, and John obtained a declaratory judgment in 1998 from the trial court that recognized the validity of the trusts and the right of all five siblings to act as co-trustees.

¶ 10 By 1999, the assets of the trusts had been sold, but the siblings could not agree on the distribution of the proceeds. Dwight and John, using Linnea's signature to assert majority will, filed various motions with the court in an attempt to effectuate a distribution of the estate that would give Joe and Rikki reduced shares. Joe and Rikki objected. The trial court eventually conducted an evidentiary hearing on whether any beneficiary should have his or her one-fifth share offset for expenses owed to the trusts. The hearing lasted five and one-half days, and the trial court made numerous findings of fact and conclusions of law.

¶ 11 The trial court found that McClure's attempt to change the priority of trustees in the 1987 Amendment was invalid as to the Family Trust because the Family Trust was not subject to revocation or amendment at that time. With regard to the Marital Trust, the court found that Joe and Rikki acted properly in excluding others from the trust's management only until McClure died and the majority of the siblings asserted their right to have all five siblings act as co-trustees. Thus, the trial court held:

> From the death of Helen Hughes and subsequent resignation of Robert Bennett, the five children should have been co-trustees as to at least half of the trust funds. They should have been co-trustees as to the entire trust corpus since shortly after the death of McClure Hughes.

¶ 12 The trial court also found that Joe and Rikki had "disregarded the plain language of all of the trust documents regarding priority of the trustees," and had "failed to regularly account to trust beneficiaries as required by statute." It ordered Joe and Rikki to repay the trust for the amounts used to bring the California conservatorship proceeding, which it found to constitute an action "not in harmony with trust intent." In addition, the court found that Joe and Rikki had paid themselves excessive trustee fees. It ruled that the agreement executed between Joe and Rikki stating their right to be paid trustee fees had no legal effect, but that the 1987 Amendment nonetheless entitled them to reasonable fees. After allowance for what the trial court determined to be a reasonable fee, Joe and Rikki were directed to repay the trusts a combined amount of approximately $61,000.

¶ 13 Finally, relying on its inherent equitable power, the trial court ordered Joe and Rikki to pay Linnea's attorney fees. In awarding Linnea these fees, the court relied on *Stewart v. Utah Public Service Commission*, 885 P.2d 759, 782–83 (Utah 1994), in which this court recognized that courts "have exercised the inherent power to award attorney fees when a beneficiary sues a trustee for violation of the trust and obtains a recovery for all other beneficiaries whose rights were also violated by the trustee."

¶ 14 The parties appealed and cross-appealed the trial court's judgment. The court of appeals affirmed the trial court in all respects, including its determination that Linnea was entitled to an award of attorney fees from Joe and Rikki. *Cafferty v. Hughes*, 2002 UT App 105, 46 P.3d 233. We granted Joe and Rikki's petition for certiorari review of the portion of the court of appeals' decision affirming the award of attorney fees to Linnea.

## ANALYSIS

¶ 15 In affirming the trial court's award of attorney fees to Linnea, the court of appeals stated:

[T]he award of fees was within the trial court's discretion and is supported by the record. Linnea sued Joe and Rikki, acting as trustees, "for violation of the trust" and obtained "a recovery for all other beneficiaries whose rights were also violated by the trustee[s]." The only relevant finding is whether Linnea obtained a recovery based on a violation of the trust. The record is clear that she did. Not only was the award of trustee fees that Rikki and Joe paid themselves substantially lowered, but also the costs associated with the California conservatorship proceeding were recaptured and charged against Rikki and Joe's distributive shares.

*Cafferty v. Hughes*, 2002 UT App 105, ¶ 24, 46 P.3d 233 (citations omitted).

¶ 16 Joe and Rikki argue that the court of appeals inappropriately limited its review of the award of attorney fees to the issue of whether Linnea obtained a recovery based on a violation of the trust agreement. They assert that the court of appeals was required to analyze whether the award served the interests of justice and equity by considering a number of additional factors. Specifically, Joe and Rikki argue that the court of appeals should have explicitly addressed Linnea's allegedly bad conduct, the alleged good-faith basis for their own actions, and the issue of whether the litigation resulted in a benefit to the trust estate. In Joe and Rikki's view, had the court of appeals considered these factors, it would not have found them liable for Linnea's attorney fees.

¶ 17 We begin by considering the applicable standard of review and briefly discussing the inherent equitable power of courts to award attorney fees. We then address Joe and Rikki's arguments as to the sufficiency of the court of appeals' review and the equitable nature of the outcome in this particular case.

## I. STANDARD OF REVIEW

¶ 18 "When exercising our certiorari jurisdiction, we review the decision of the court of appeals and not that of the trial court." *State v. Martinez*, 2002 UT 80, ¶ 5, 52 P.3d 1276 (citation and quotation omitted). The parties in this case disagree as to whether the court of appeals employed the proper standard in reviewing the award of attorney

fees. The question of whether the court of appeals applied the appropriate standard is a question of law that we review for correctness. *See State v. Pena*, 869 P.2d 932, 936 (Utah 1994).

¶ 19 Linnea contends that the court of appeals correctly applied an abuse of discretion standard given the equitable nature of the attorney fee award. In contrast, Joe and Rikki argue that the court of appeals should have applied a correction of error standard—the same standard that would be applied to an award of attorney fees made pursuant to statute or contract. *See, e.g., Valcarce v. Fitzgerald*, 961 P.2d 305, 315 (Utah 1998); *Saunders v. Sharp*, 840 P.2d 796, 809 (Utah Ct.App.1992).

¶ 20 We hold that the appropriate standard for reviewing equitable awards of attorney fees is abuse of discretion. When a court awards attorney fees pursuant to statute or contract, it does so in recognition of a party's legal right to an award. In contrast, a court making an equitable award of fees is concerned not with a party's legal entitlement to an award, but with the equities. In other words, the court must ascertain whether the equities of a given case justify the use of its inherent and discretionary power to award fees. *See Thurston v. Box Elder County*, 892 P.2d 1034, 1041 (Utah 1995) ("A trial court is accorded considerable latitude and discretion in applying and formulating an equitable remedy."); *Saunders*, 840 P.2d at 809 (noting the discretion courts have when awarding fees as an equitable remedy as opposed to awarding fees as a matter of legal right); *accord Dardovitch v. Haltzman*, 190 F.3d 125, 145–46 (3d Cir.1999) (applying Pennsylvania law) ("[T]he District Court's discretion in deciding whether to grant attorney's fees in an equity case is exceedingly broad."). The court of appeals thus appropriately recognized the award in this case as a matter "within the trial court's discretion." *Cafferty v. Hughes*, 2002 UT App 105, ¶ 24, 46 P.3d 233.

## II. EQUITABLE AWARDS OF ATTORNEY FEES

¶ 21 In general, Utah follows the traditional American rule that attorney fees cannot be recovered by a prevailing party unless a statute or contract authorizes such an award. *Stewart v. Utah Pub. Serv. Comm'n*, 885 P.2d 759, 782 (Utah 1994). "However, in the absence of a statutory or contractual authorization, a court has inherent equitable power to award reasonable attorney fees when it deems it appropriate in the interest[s] of justice and equity." *Id.* This power is " 'part of the original authority of the chancellor to do equity in a particular situation.' " *Hall v. Cole*, 412 U.S. 1, 5, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973) (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 166, 59 S.Ct. 777, 83 L.Ed. 1184 (1939)); *Stewart*, 885 P.2d at 782; *see also Sprague*, 307 U.S. at 164–67, 59 S.Ct. 777 (reviewing the history of equitable powers).

¶ 22 In *Stewart*, this court recognized categories of cases in which courts have exercised their inherent equitable power to award attorney fees. 885 P.2d at 782–83. In particular, the court observed that courts of equity have awarded attorney fees in cases where "a beneficiary sues a trustee for violation of the trust and obtains a recovery for all other beneficiaries whose rights were also violated by the trustee." *Id.* at 782–83 (citing *In re Estate of McCart*, 847 P.2d 184, 187 (Colo.Ct.App.1992); *Robinson v. Kirbie*, 793 P.2d 315, 319 (Okla.Ct.App.1990); *Fred Hutchinson Cancer Research v. Holman*, 107 Wash.2d 693, 732 P.2d 974, 987 (1987); *Allard v. Pac. Nat'l Bank*, 99 Wash.2d 394, 663 P.2d 104, 112 (1983)). The facts and circumstances of this case place it within this category.[1]

## III. CONSIDERATIONS RELEVANT TO EQUITABLE AWARDS OF ATTORNEY FEES

¶ 23 We now address Joe and Rikki's argument that the court of appeals improperly

---

1. A party is not necessarily entitled to an equitable award of attorney fees merely because a case falls into one of the categories of cases recognized in *Stewart*. Rather, trial courts retain discretion to decide whether an award of attorney fees is "appropriate in the interest[s] of justice and equity" in any given case. *Stewart*, 885 P.2d at 782.

limited its review of the attorney fees award. Joe and Rikki assert that the court of appeals erred when it stated that the only finding relevant to its review of the award was whether "Linnea obtained a recovery based on a violation of the trust." *Cafferty v. Hughes*, 2002 UT App 105, ¶ 24, 46 P.3d 233. We agree with Joe and Rikki that the particular language employed by the court of appeals is inappropriately narrow inasmuch as it fails to recognize the broad discretion vested in courts of equity. We do not agree, however, that the court of appeals erred in its overall review of the attorney fees issue.

 ¶ 24 All parties concede this is a case in equity, and equity cases afford courts discretion and latitude in fashioning equitable remedies. Although the court of appeals could have provided a more comprehensive opinion discussing all of the equities present in this case, it was not required to do so. A court acting in equity is not required to recite its decision in terms of specific factors or to adhere to formulaic tests. Rather, its obligation is to effectuate a result that serves equity given the overall facts and circumstances of the individual case.[2]

¶ 25 The court of appeals was aware of the facts and circumstances of this case as developed in the trial court proceedings and as briefed by the parties. Joe and Rikki presented their arguments relating to the fairness of awarding fees to Linnea to the court of appeals, and ultimately, the court held that Linnea's award was "supported by the record." *Id.* The court further recognized that the case presented a breach of trust situation akin to that mentioned in *Stewart*. *Id.* A more expansive discussion of the issue was possible but not necessary.[3]

¶ 26 In connection with their argument that the court of appeals did not properly review the award of attorney fees, Joe and Rikki invite this court to establish a general rule governing equitable awards of attorney fees. We reject their invitation in view of our conclusion that imposition of such a rule would hamper the ability of our trial courts to fashion equitable remedies appropriate for individual cases.[4]

> The distinguishing characteristics of legal remedies are their uniformity, their unchangeableness or fixedness, their lack of adaptation to circumstances, and the technical rules which govern their use.... Equitable remedies, on the other hand, are distinguished by their flexibility, their unlimited variety, [and] their adaptability to circumstances.... [T]he court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties.

1 Spencer W. Symons, *Pomeroy's Equity Jurisprudence* § 109 (5th ed.1941).

2. Because decisions in equity are based on the overall facts and circumstances of each individual case, it is appropriate to give considerable deference to the trial court:

> [I]t is before [the trial] court that the witnesses and parties appear and the evidence is adduced. The judge of that court is therefore considered to be in the best position to assess the credibility of witnesses and to derive a sense of the proceeding as a whole, something an appellate court cannot hope to garner from a cold record.

*State v. Pena*, 869 P.2d 932, 936 (Utah 1994) (citation omitted).

3. Despite the court of appeals' statement that the only factor relevant to its review of the award was whether Linnea obtained a recovery based on a violation of the trust, its opinion reveals that it was attuned to the overall equitable considerations present in this case. Evidence of this fact is found in its affirmance of the trial court's order denying an award of attorney fees to John Hughes. John, like Linnea, participated as a beneficiary in litigation establishing a violation of the trust and recovering funds for the other beneficiaries. The court of appeals, however, denied John attorney fees because it agreed with the trial court that John's actions, some of them pro se, had "radically increased the complexity of the trial and burdened the other parties." *Cafferty*, 2002 UT App 105 at ¶¶ 29–31, 46 P.3d 233. Further evidence that the court of appeals was attuned to the overall equities of the case is found in its decision to affirm the trial court's decision lowering the reimbursable hourly rate of Linnea's attorneys from $175 to $150 per hour.

4. Similarly, while it would be possible to identify various factors that other courts have considered in ruling on equitable requests to award attorney fees, *see* A.M. Swarthout, Annotation, *Allowance of Attorneys' Fees in, or Other Costs of, Litigation by Beneficiary Respecting Trust*, 9 A.L.R.2d 1132, 1950 WL 7096 (1950 & Supp.2003), identifying those factors may serve to undermine the flexible nature of decisions in equity by suggesting a mechanical test for awarding fees.

¶ 27 Each case presents unique facts and circumstances. What is relevant or persuasive in one equity decision may be meaningless in another context. "As in much else that pertains to equitable jurisdiction, individualization in the exercise of a discretionary power will alone retain equity as a living system and save it from sterility." *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 167, 59 S.Ct. 777, 83 L.Ed. 1184 (1939).

## IV. EQUITY OF AWARDING FEES IN THIS CASE

■ ¶ 28 We now address Joe and Rikki's argument that the court of appeals upheld the award of attorney fees in contravention of equity. Joe and Rikki rely on three facts that they contend render the award of attorney fees inequitable in this case. First, Joe and Rikki argue that Linnea is "guilty of serious misconduct" and is therefore undeserving of an award. They point specifically to the fact that Linnea supported Dwight and John in their filing of motions designed to effectuate an "unfair" distribution of the estate. Although this alleged misconduct was argued to both the trial court and the court of appeals, neither court found it persuasive and neither court concluded that Linnea's actions were improper. Our review of the record reveals nothing to suggest that the court of appeals was incorrect with respect to this conclusion.

¶ 29 Second, Joe and Rikki assert that they acted in good faith. They therefore urge us to conclude that the award of attorney fees was improper or, alternatively, that it should be satisfied from the assets of the trust.[5] Their claim is undermined, however, by the trial court's findings that Joe and Rikki "disregarded the plain language of all of the trust documents regarding priority of trustees," "engaged in a pattern aimed at remaining as trustees without interference from their siblings," "failed to regularly account to trust beneficiaries as required by statute," ignored legal counsel concerning the disposition of funds removed from the Marital Trust, and paid themselves excessive trustee fees.

¶ 30 Finally, Joe and Rikki argue that no award should have been granted because Linnea sought personal benefit in this litigation and the trust was not benefitted as a whole by her actions. We disagree. The record does not show that Linnea sought only personal gain. Indeed, the litigation resulted in a recapture of substantial funds to the trust estate, which benefitted all of the beneficiaries.

## CONCLUSION

■ ¶ 31 In deciding whether to equitably award attorney fees, a court exercises its discretion and need not adhere to a rigid analysis. After reviewing the record, we uphold the court of appeals' conclusion that the trial court properly exercised its discretion in awarding attorney fees to Linnea and in ordering that those fees be paid by Joe and Rikki. The judgment of the court of appeals is affirmed.

¶ 32 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice NEHRING concur in Justice PARRISH's opinion.

---

**5.** The court of appeals did not address Joe and Rikki's argument that the fee award should be paid from the trust as a whole rather than from their respective shares. This issue, like the issue of whether to award fees at all, is dependent upon the overall facts and circumstances of each individual case and rests within the sound discretion of the trial court. We therefore decline to establish a general rule for courts to follow when evaluating this issue. In most cases, however, equity will require that a trustee possess a degree of culpability greater than mere negligence before the trustee is held personally liable for attorney fees.