2008 UT App 22

**Alayna J. CULBERTSON and Diane Pearl Meibos, Plaintiffs and Appellants,**

v.

**BOARD OF COUNTY COMMISSIONERS OF SALT LAKE COUNTY; and Ken Jones, Director of Development Services of Salt Lake County, Defendants and Appellees.**

No. 20060573–CA.

Court of Appeals of Utah.

Jan. 25, 2008.

Michael D. Black, Jeffrey J. Hunt, David C. Reymann, and Ronald G. Russell, Salt Lake City, for Appellants.

Lohra L. Miller, Salt Lake County Atty., Donald H. Hansen, and T.J. Tsakalos, Salt Lake City, for Appellees.

Before GREENWOOD, P.J., THORNE, Associate P.J., and DAVIS, J.

## OPINION

GREENWOOD, Presiding Judge:

¶ 1 Alayna J. Culbertson and Diane Pearl Meibos (Plaintiffs) appeal the trial court's order denying their motion for an equitable award of attorney fees. First, Plaintiffs argue that the trial court erred in its application of the private attorney general doctrine because it failed to analyze the appropriate factors under that doctrine; and second, Plaintiffs argue that the trial court erred in concluding that it had no authority to award attorney fees under the court's general equitable authority. The Salt Lake County Board of Commissioners and Ken Jones, Director of Development Services of Salt Lake County (Defendants or the County), argue that the trial court's order was proper and, further, that Plaintiffs are not entitled to fees because (1) they failed to file a notice of claim under the Governmental Immunity Act of Utah, *see* Utah Code Ann. § 63–30d–401(3) (Supp.2007), and the County was exercising a governmental function when it issued the conditional use permit, *see id.* § 63–30d–201(1) (2004); and (2) the County Land Use Development and Management Act (CLUD-MA) precludes such an award. *See* Utah Code Ann. § 17–27–1002(1)(a)(i)–(ii) (1999). We reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶ 2 This case has a lengthy history in Utah's appellate courts. *See Culbertson v. Board of County Comm'rs*, 2001 UT 108, 44 P.3d 642 (*Culbertson I*); *Johnson v. Hermes Assocs., Ltd.*, 2005 UT 82, 128 P.3d 1151 (*Culbertson II*). However, because the sole issue on appeal is attorney fees, we provide only an abbreviated version of the case's background. A more complete rendition of the facts is set forth in *Culbertson II. See* 2005 UT 82, ¶¶ 3–9, 128 P.3d 1151.

¶ 3 This controversy began in 1991, when Hermes Associates, Ltd. (Hermes) sought to expand an existing shopping center in Salt Lake County. *See id.* ¶ 3. Plaintiffs filed an action against the County protesting the development, in part, on the basis that the County failed to abide by its own ordinances by changing the status of the roads where the expansion would take place. *See id.* ¶ 7. Plaintiffs also sought to require the County to enforce the conditional use permit that it had granted to Hermes. *See id.* The trial court dismissed the action, concluding, inter alia, that Plaintiffs had not exhausted their administrative remedies. *See id.* ¶ 8. After unsuccessfully pursuing administrative remedies, Plaintiffs filed an action against Hermes

and re-filed their complaint against the County. *See id.* ¶¶ 7–8. The trial court granted Defendants' motions for summary judgment in both cases. *See id.* Plaintiffs appealed.

¶ 4 In *Culbertson I,* the supreme court consolidated the two cases and reversed the district court's grant of summary judgment, concluding that the streets at issue were public and thus, were required to conform to the County's conditional use permit and all zoning and roadway ordinances. *See id.* ¶ 9. The court also held that the County had erred in granting "roadway exceptions because the County failed to follow its own rule for granting exceptions." *Id.* Additionally, the supreme court held that Hermes acted willfully and deliberately in proceeding with the project and that the County acted with complicity because it allowed Hermes to proceed, in spite of the fact that it was on notice that Hermes's conduct was illegal. *See Culbertson I,* 2001 UT 108, ¶ 56, 44 P.3d 642. The court then remanded to the district court for findings on Plaintiffs' injuries and to award Plaintiffs an appropriate remedy. *See id.* ¶¶ 55, 57.

¶ 5 The case returned to the supreme court in 2005 (*Culbertson II* ), and the court (1) affirmed the trial court's order granting Plaintiffs' partial summary judgment; (2) held that Plaintiffs had the requisite standing to argue for, and did in fact establish, special damages; (3) affirmed the trial court's order requiring Hermes to restore the property; and (4) affirmed the trial court's "decision not to balance the parties' equities ... [because] parties who deliberately and intentionally violate zoning laws are not entitled to a balance of equities in the injunctive relief analysis." *Culbertson II,* 2005 UT 82, ¶ 34, 128 P.3d 1151.

¶ 6 After *Culbertson II,* Plaintiffs filed a motion in the trial court seeking attorney fees under several equitable theories. The trial court denied the motion, concluding that Plaintiffs' case did not qualify for fees under the private attorney general doctrine and that the court did not have authority to award fees under its inherent equitable powers. Plaintiffs appeal.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 7 Plaintiffs argue that the trial court erred by denying their request for attorney fees under the private attorney general doctrine and by concluding that it does not have authority to award attorney fees under the court's inherent equitable powers, thus presenting questions of law to be reviewed for correctness. Prior to oral argument in this case, "the appropriate standard for reviewing equitable awards of attorney fees [was] abuse of discretion." *Hughes v. Cafferty,* 2004 UT 22, ¶ 20, 89 P.3d 148; *accord Utahns for Better Dental Health–Davis, Inc. v. Davis County Comm'n,* 2005 UT App 347, ¶ 5, 121 P.3d 39 (*Better Dental Health I* ). However, after oral argument, the Utah Supreme Court issued *Utahns for Better Dental Health–Davis, Inc. v. Davis County Clerk,* 2007 UT 97 (*Better Dental Health II* ), changing the standard of review in private attorney general cases to de novo: "Today we recognize that the highly deferential standard of review utilized for other equitable awards of attorney fees is unsuitable for private attorney general doctrine cases and conclude instead that de novo review should be applied." [1] *Id.* ¶ 6. Thus, we review Plaintiffs' claim for attorney fees under the private attorney general doctrine as a matter of law.[2]

■ ¶ 8 The County argues that because this litigation comes within section 1002 of CLUDMA, and section 1002 does not provide for attorney fees in its enumeration of remedies, *see* Utah Code Ann. § 17–27–1002(1)(a)(i)–(ii) (1999), Plaintiffs are prohibited from receiving any such fees. The County also argues that Plaintiffs' claim is barred by the Governmental Immunity Act of Utah, *see* Utah Code Ann. §§ 63–30d–101 to –904 (2004 & Supp.2007), because Plaintiffs failed to file a notice of claim, *see id.*

---

1. Adding to this case's interesting posture, after it was briefed to the supreme court, it was transferred to this court. *See* Utah R.App. P. 42(a).

2. Because we resolve Plaintiffs' claim for attorney fees under the private attorney general doctrine, we have no need to address the trial court's inherent equitable powers.

§ 63–30d–401(3) (Supp.2007), and the County was exercising a governmental function when it issued the conditional use permit. *See id.* § 63–30d–201(1) (2004). These arguments present issues of statutory interpretation and thus are questions of law that we review for correctness. *See Sill v. Hart,* 2007 UT 45, ¶ 5, 162 P.3d 1099.

## ANALYSIS

### I. Equitable Awards of Attorney Fees

 ¶ 9 Utah follows the American rule regarding attorney fees, which dictates that fees are generally recoverable only if provided for by statute or contract. *See Stewart v. Utah Pub. Serv. Comm'n,* 885 P.2d 759, 782 (Utah 1994). "However, in the absence of a statutory or contractual authorization, a court has inherent equitable power to award reasonable attorney fees when it deems it appropriate in the interest of justice and equity." *Id.* When awarding fees under their inherent equitable powers, Utah courts have relied on several equitable doctrines, one of which is the private attorney general doctrine. *See id.* at 782–83 (describing various equitable doctrines under which courts have awarded attorney fees). In *Stewart v. Utah Public Service Commission,* 885 P.2d 759 (Utah 1994), the supreme court held that Utah courts may award attorney fees under this doctrine when "the 'vindication of a strong or societally important public policy' takes place and the necessary costs in doing so 'transcend the individual plaintiff's pecuniary interest to an extent requiring subsidization.'" *Id.* at 783 (quoting *Serrano v. Priest,* 20 Cal.3d 25, 141 Cal.Rptr. 315, 569 P.2d 1303, 1314 (1977)); *see also Faust v. KAI Techs., Inc.,* 2000 UT 82, ¶ 18, 15 P.3d 1266 (stating that "in *Stewart* [the supreme court] recognized an exception to the traditional rule and held that an equitable award of attorney fees was proper under the private attorney general doctrine, which allows for an award of fees where a plaintiff successfully vindicates an important public policy benefitting a larger population"). The court cautioned, however, that such fees are

appropriate only in "extraordinary" cases. *Stewart,* 885 P.2d at 783 n. 19. In *Better Dental Health II,* the supreme court reiterated these three factors, *see* 2007 UT 97, ¶ 5, 175 P.3d 1036, while explaining that "the threshold issue is a rather transcendent, large picture question of public policy, namely, whether an important right affecting the public interest has been vindicated."[3] *Id.* ¶ 8. The court further explained that such a public policy question is appropriate for de novo review because "appellate judges, who have the benefit of deliberating as a panel and reviewing the well-considered arguments of the parties on appeal, have an advantaged position to review such considerations." *Id.*

 ¶ 10 Our de novo review is further guided by supreme court precedent explaining that an equitable award of attorney fees, even under the private attorney general doctrine, turns on the facts and circumstances of a particular case: "'Equitable remedies ... are distinguished by their flexibility, their unlimited variety, [and] their adaptability to circumstances.... [T]he court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties.'" *Hughes v. Cafferty,* 2004 UT 22, ¶¶ 24–26, 89 P.3d 148 (alterations in original) (footnote omitted) (quoting 1 Spencer W. Symons, *Pomeroy's Equity Jurisprudence* § 109 (5th ed.1941)); *see also Woodland Hills Residents Ass'n, Inc. v. City Council of L.A.,* 23 Cal.3d 917, 154 Cal.Rptr. 503, 593 P.2d 200, 211 (1979) (stating that awarding court "must realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award under a private attorney general theory"). Therefore, we review the record to determine, from a practical viewpoint and from the unique circumstances present, whether Plaintiffs' litigation vindicated "'a strong or societally important public policy'"; whether "the necessary costs in doing so 'transcend[ed] [Plaintiffs'] pecuniary interest to an extent requiring subsidization'"; and

---

**3.** The court also clarified that there is no requirement "that a plaintiff somehow show an inability to pay its own attorney fees in order to be eligible

for reimbursement under the [private attorney general] doctrine." *Better Dental Health II,* 2007 UT 97, ¶ 9, 175 P.3d 1036.

whether this case is exceptional such that an award of fees is appropriate under the private attorney general doctrine. *Better Dental Health II*, 2007 UT 97, ¶ 5, 175 P.3d 1036 (quoting *Stewart*, 885 P.2d at 783).

### A. Strong or Societally Important Public Policy

¶ 11 Plaintiffs requested attorney fees under the private attorney general doctrine on the basis that they vindicated an important public policy with no accompanying pecuniary benefit for themselves. In denying Plaintiffs' motion, the trial court recognized the egregiousness of the County's conduct, including its "willful, deliberate violation of the law." The trial court then examined who primarily benefitted from Plaintiffs' efforts: "I really don't find [the private attorney general doctrine] particularly applicable to the facts in this case ·because ... the specific results obtained ... primarily benefitted the plaintiffs and not the public as a whole." In greater detail, the trial court stated:

> If there were a doctrine either found in a statute or in an opinion that gave me authority to award attorney[ ] fees if the County willfully violated its own ordinances, I would not hesitate to do that in this case; however, I remain unconvinced that this is a good case for application of the Private Attorney General's [sic] Exception to the general rule in Utah which is that I don't award attorney fees to prevailing parties.... [T]he approach that I've taken is to look at the specific results obtained in the litigation and determine who benefitted primarily.... *Stewart* says, "Courts have awarded attorney's fees to a party as a Private Attorney General when vindication of a strong or society [sic] important public policy takes place and the necessary costs of doing so, transcends the individual's pecuniary interest to an extent requiring subsidation.["] Now there was no individual pecuniary interest [here] ... but there was an individual interest pursued in this case in terms of improving access to a specific parcel of property and what I think that language requires me to do is look at the results and weigh and determine ... who ultimately benefitted from the specific results in this case?

¶ 12 Plaintiffs argue that the trial court erred by focusing solely on whether the litigation's result primarily benefitted them, and by not also addressing any benefit to the public at large. In response, Defendants assert that the trial court's focus on the benefit conferred on Plaintiffs as a result of the litigation was proper because it illustrates that the litigation did not involve a public interest. We disagree with both Defendants' and the trial court's assertion that Plaintiffs were the primary beneficiaries of this litigation, thus precluding an award under the private attorney general doctrine. Although it is true that Plaintiffs' property abutted the development that is the subject of this litigation and, thus, would have likely been most heavily impacted by the development, Plaintiffs brought this lawsuit not only to protect their property, but also to require the County to abide by its own ordinances and prevent collusion between government and private parties. Such motivation serves the important public policy of "ensur[ing] that [the] County was governed by rule of law, not of man." *Fox v. Board of County Comm'rs*, 121 Idaho 686, 827 P.2d 699, 706 (Ct.App.1991).

¶ 13 Although some courts have refused to award fees under the private attorney general doctrine where the plaintiff has a large personal stake in the outcome of the litigation, *see, e.g., Williams v. San Francisco Bd. of Permit Appeals*, 74 Cal.App.4th 961, 88 Cal.Rptr.2d 565, 567–68 (1999) (concluding that the trial court did not abuse its discretion denying fees because although the plaintiff's actions "had conferred a benefit on his neighborhood, and arguably City residents in general," the plaintiff also had a "large personal stake in the matter in preventing construction of a·structure which was incompatible with ... his neighborhood" (internal quotation marks omitted)), we believe this case is distinguishable because Plaintiffs' lawsuit was not merely directed at unwanted development, but was also directed at curbing the County's *willful disregard* of its own ordinances and procedures.

¶ 14 Our decision is influenced by the supreme court's statements in *Culbertson I*

and *Culbertson II*—which highlighted the County's egregious conduct—as well as the trial court's own observations that Hermes and the County acted together in willfully disregarding zoning ordinances to obtain their own economic advantage.[4] For example, in *Culbertson I*, the supreme court stated:

> Hermes acted willfully and deliberately when it constructed its buildings after plaintiffs put both Hermes and the County on notice that the proposed construction would violate county ordinances. By allowing Hermes to proceed, the County stepped into the quagmire which we condemned in *Springville Citizens for a Better Community v. City of Springville*, where we emphasized that local zoning authorities "are bound by the same terms and standards of applicable zoning ordinances and are not at liberty to make land use decisions in derogation thereof."

*Culbertson I*, 2001 UT 108, ¶ 56, 44 P.3d 642 (quoting *Springville*, 1999 UT 25, ¶ 30, 979 P.2d 332). In *Culbertson II*, the court stated that "it is undisputed that Hermes did not innocently impede Appellee's property rights. Hermes admits it had actual and repeated notification from [Plaintiffs] that [Plaintiffs] believed Hermes to be infringing on their property rights." 2005 UT 82, ¶ 32, 128 P.3d 1151. Thus, this litigation involved more than Plaintiffs' property interest, but in addition, was directed at curbing the government from knowingly acting in derogation of the law. Although there is little case law in Utah to guide our important public policy jurisprudence, courts in other jurisdictions have found such a pursuit to vindicate an important public policy. *See, e.g., Woodland Hills Residents Assn.*, 154 Cal.Rptr. 503, 593 P.2d at 212 (recognizing that "the public always has a significant interest in seeing that legal strictures are properly enforced and thus, in a real sense, the public always derives a 'benefit' when illegal private or public conduct is rectified"); *Starbird v. County of San Benito*, 122 Cal.App.3d 657, 176 Cal.Rptr. 149, 153 (1981) (awarding fees under the private attorney general doctrine where the plaintiffs "vindicated important rights of the people of San Benito County which were ignored by the officials charged with enforcing them"); *Fox*, 827 P.2d at 706 (awarding fees under the private attorney general doctrine based in part on the acknowledgment that without the plaintiff's efforts, the county's illegal conduct may have gone unchallenged). *But see Williams*, 88 Cal.Rptr.2d at 567–68 (affirming the trial court's order denying attorney fees because although the plaintiff's actions benefitted the neighborhood, the plaintiff also had a "large personal stake" in the outcome of the litigation (internal quotation marks omitted)).

¶ 15 Our decision is further influenced by the fact that Plaintiffs attempted, two times, to resolve this issue without litigation, yet their efforts were rebuffed. "Plaintiffs notified [Defendants] twice through legal counsel that the [proposed development] . . . restricted access to their property. They asked the County to enforce the applicable ordinances, building codes and Hermes's CUP to stop the encroachment and ensure that 1070 East Street complied with county roadway standards." *Culbertson I*, 2001 UT 108, ¶ 6, 44 P.3d 642. It was only after the County failed to act upon Plaintiffs' notification that Plaintiffs filed suit. Having been unsuccessful with pre-litigation efforts, Plaintiffs were left with few other options that could have corrected the County's conduct.

¶ 16 Based on the County's willful disregard of its own rules and ordinances and its refusal to respond to Plaintiffs pre-litigation efforts, we conclude that Plaintiffs' litigation vindicated "an actual and concrete benefit to a large number of citizens," *Better Dental II*, 2007 UT 97, ¶ 10, 175 P.3d 1036, because it required the County to abide by the rule of law when no other avenue toward that end had been successful. Thus, the first factor of the private attorney general doctrine is satisfied.

---

4. Although we conduct a de novo review, we note that the trial court is charged with resolving "factual questions about the underlying merits of a dispute." *Id.* ¶ 7 n. 5. Thus, we review the issue of attorney fees as a matter of law, giving deference to the trial court's factual findings regarding the merits of the case.

## B. Plaintiffs's Pecuniary Interest

¶ 17 The second factor under *Stewart* requires us to consider whether Plaintiffs' costs incurred in this litigation exceeded their intended goals to such an extent that subsidization is appropriate. *See Stewart v. Utah Pub. Serv. Comm'n*, 885 P.2d 759, 783 (Utah 1994). As the trial court acknowledged, Plaintiffs had no pecuniary interest in the litigation, because they sought only access to their property. The injunctive relief sought was premised on enforcement of County ordinances and restoration of their property. Therefore, we conclude that Plaintiffs' costs in this protracted litigation transcended their pecuniary goals to the extent that subsidization is required.

## C. Extraordinary Nature of the Case

¶ 18 Finally, *Stewart* requires us to consider whether this case is extraordinary. *See id.* at 783 n. 19. With little guidance instructing us as to what constitutes an extraordinary case, we view this question from the same perspective as the first question, in other words, as "a rather transcendent, large picture question." *Better Dental Health II*, 2007 UT 97, ¶ 8, 175 P.3d 1036. In doing so, we acknowledge that this case is in fact, exceptional, in that individual residential property owners were required to bring litigation to force the government to abide by its own rules and laws, and furthermore, that the trial court and the supreme court determined that such rules and laws were being willfully disregarded. "But for plaintiffs' action," and their standing to challenge the development, the County's conduct "would have been unchallenged." *Stewart*, 885 P.2d at 783. Additionally, the County's unwillingness to respond in a meaningful way to Plaintiffs' prelitigation claims and its engagement in this protracted litigation distinguishes this case from the run of the mill dispute between a public entity and members of the public. Plaintiffs did not seek large amounts of money damages, simply enforcement of county ordinances. It is rather amazing that Plaintiffs persisted in their efforts, no doubt necessitating significant expenditures of time and work by their legal representatives. We therefore conclude that this case is extraordinary.

¶ 19 In summary, because all three *Stewart* factors are satisfied, we remand to the trial court for a determination of reasonable attorney fees incurred, *see Better Dental Health II*, 2007 UT 97, ¶ 7, 175 P.3d 1036 n. 5 (stating that the trial court must "make factual determinations about the nature, amount, and value of legal services provided, and ultimately reach some 'equitable' conclusion about what, if any, attorney fees are due"), in *Culbertson I*, *Culbertson II*, and this appeal. Based on this conclusion we do not further address Plaintiffs' argument that the trial court should have awarded attorney fees under the court's general equitable powers.

## II. The County's Governmental Immunity Claim

¶ 20 The County argues that, notwithstanding any of the foregoing, Plaintiffs' claim is barred by the Governmental Immunity Act of Utah because Plaintiffs failed to file a notice of claim, *see* Utah Code Ann. § 63–30d–401(3) (Supp.2007), and the County was exercising a governmental function when it issued the conditional use permit. *See id.* § 63–30d–201 (2004). We reject the County's argument, as did the trial court, because Plaintiffs' claim for attorney fees is equitable in nature, and it is well settled that there is no governmental immunity for equitable claims. *See American Tierra Corp. v. City of W. Jordan*, 840 P.2d 757, 759 (Utah 1992) ("This court long has recognized a common law exception to governmental immunity for equitable claims. Neither the passage of time nor the enactment of the Utah Governmental Immunity Act has eroded this exception." (citations omitted)). Moreover, the supreme court has explained that neither lack of notice nor governmental immunity are valid defenses to equitable claims. *See Bowles v. Department of Transp.*, 652 P.2d 1345, 1346 (Utah 1982) ("[G]overnmental immunity is not a defense to equitable claims."); *El Rancho Enters., Inc. v. Murray City Corp.*, 565 P.2d 778, 780 (Utah 1977) ("[A]n equitable claim may be brought without the neces-

sity of first presenting a claim for damages.").

### III. The County's CLUDMA Claim

¶ 21 Finally, the County argues that CLUDMA, *see* Utah Code Ann. §§ 17–27–101 to –1003 (1999) (amended and renumbered at 17–27a–101 to –803) (2005 & Supp. 2007), precludes Plaintiffs from obtaining attorney fees.[5] Specifically, the County argues that because this litigation comes within section 1002 of CLUDMA, and section 1002 does not provide for attorney fees in its enumeration of remedies, *see id.* § 17–27–1002(1)(a)(i)–(ii) (1999), Plaintiffs are prohibited from receiving any such fees. Plaintiffs respond that this claim is without merit because the supreme court has already determined that Plaintiffs' claim was not subject to CLUDMA. Plaintiffs, however, are mistaken because the court in *Culbertson I* rejected any claim under section 1001 of CLUDMA and determined that section 1002 applied: "Section 1001 applies only when a party desires to challenge a land use decision. Plaintiffs do not challenge any decision made under the ... Act, but instead seek enforcement of decisions made pursuant to it. . . . Enforcement of the act and ordinances made pursuant to it is addressed in 1002." *Culbertson I*, 2001 UT 108, ¶ 30, 44 P.3d 642 (emphasis omitted); *see also id.* (stating that Plaintiffs are entitled to a remedy under CLUDMA).

¶ 22 Relying on section 1002, the County argues that Plaintiffs may not receive attorney fees because CLUDMA provides specific remedies, not including attorney fees. In relevant part, CLUDMA states, "[A]ny owner of real estate within the county in which violations of this chapter or ordinances enacted under the authority of this chapter occur . . ., may, in addition to other remedies provided by law, institute: (i) injunctions, mandamus, abatement, or other appropriate actions. . . ." Utah Code Ann. § 17–27–1002(1)(a)(i). Given this broad language, as well as the inclusion of the phrase, "in addi-

tion to other remedies provided for by law," *id.*, we conclude that the list of remedies in section 1002 is not exclusive, and therefore, section 1002 does not prohibit the trial court from awarding Plaintiffs attorney fees. Furthermore, we note that in urging this court to accept its interpretation of CLUDMA, the County provided no citation to authority holding that a statute's silence regarding attorney fees constitutes a prohibition against awarding the same.

### CONCLUSION

¶ 23 We reverse the trial court's determination that Plaintiffs are not entitled to attorney fees under the private attorney general doctrine. We remand to the trial court for a determination of reasonable fees in Culbertson I, Culbertson II, and this appeal. Finally, we reject the County's argument for immunity and its contention that Plaintiffs' claim is barred by section 1002 of CLUDMA.

¶ 24 WE CONCUR: WILLIAM A. THORNE, Associate Presiding Judge and JAMES Z. DAVIS, Judge.

---

5. The County relies on the 1991 version of CLUDMA because it was in effect "during the time period relevant to this case." However, we cite to the 1999 version of the statute because that is what the court relied on in *Culbertson I.*

*See* 2001 UT 108, ¶ 30, 44 P.3d 642. Moreover, the language the County cites is the same in both versions. *Compare* Utah Code Ann. § 17–27–1002 (1991), *with id.* § 17–27–1002 (1999).