2015 UT App 173

# THE UTAH COURT OF APPEALS

HIGHLANDS AT JORDANELLE, LLC,
Plaintiff, Appellee, and Cross-appellant,

*v.*

WASATCH COUNTY AND WASATCH COUNTY FIRE PROTECTION
SPECIAL SERVICE DISTRICT,
Defendants, Appellants, and Cross-appellees.

MUSTANG DEVELOPMENT, LLC, ET AL.,
Plaintiffs, Appellees, and Cross-appellants,

*v.*

WASATCH COUNTY FIRE PROTECTION SPECIAL SERVICE DISTRICT,
Defendant, Appellant, and Cross-appellee.

Opinion
No. 20130445-CA
Filed July 9, 2015

Fourth District Court, Heber Department
The Honorable Fred D. Howard
No. 080500390

Barton H. Kunz II, Tyler V. Snow, Joseph A. Gatton
and Scott H. Sweat, Attorneys for Appellant
Wasatch County

Joseph E. Tesch and Stephanie K. Matsumura,
Attorneys for Appellant Wasatch County Fire
Protection Special Service District

Matthew C. Barneck and Chad E. Funk, Attorneys
for Appellees Highlands at Jordanelle, LLC,
Mustang Development, LLC, et al.

Gavin J. Anderson, Kelly W. Wright, and Bradley
C. Johnson, Attorneys for Amicus Curiae Utah
Association of Counties

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES JAMES Z. DAVIS and J. FREDERIC VOROS JR. concurred.

ORME, Judge:

¶1     Wasatch County (the County) and the Wasatch County Fire Protection Special Service District (the Fire District) appeal the trial court's determination that, among other things, the County and the Fire District must refund fire-protection service fees to certain landowners. Because we determine that at least some of the service fees were reasonable, we affirm in part, reverse in part, and remand to the trial court for further proceedings consistent with this opinion.

BACKGROUND[1]

¶2     The Jordanelle Reservoir, located in rural Wasatch County, was completed in 1995. Landowners wanted to take advantage of their newly created lakefront property but were stymied by dated zoning regulations that permitted only one farmhouse per 160 acres. In response, the Wasatch County Commission passed a resolution that allowed developers to seek a higher building density by applying for a "density determination." Once the County made a density determination, it would grant the

---

1. The trial court's final determination of the issues raised in this appeal resulted from a series of motions and a two-day evidentiary hearing. Where the trial court granted motions for summary judgment, we will recite the facts relevant to those motions in the light most favorable to the nonmoving party. *See Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600. Where the trial court resolved disputed issues following the receipt of evidence, we will recite the facts in the light most favorable to the trial court's findings. *See Bel Courtyard Invs., Inc. v. Wolfe*, 2013 UT App 217, ¶ 2 n.1, 310 P.3d 747.

landowners the right to build multiple equivalent residential units (ERUs) on their property. But because the Jordanelle Reservoir was far from any existing fire stations, the County also determined that the developers should pay additional fire-protection service fees to build an adequate fire station in the area.[2]

¶3     The Wasatch County Commissioners,[3] acting as the board of the Fire District, then passed Resolution 99-3, which authorized the Fire District to charge a monthly fee of $14.81 per ERU. Once landowners had their ERU determination, they were required to pay the monthly fee whether they started construction on the property or not. For example, Highlands at Jordanelle, LLC, the original plaintiff in this case, received a density determination of 376 ERUs. It was therefore required to pay $14.81 per ERU, a total of $5,568.56 per month, from that point forward.

¶4     To pay down the construction bond for the new fire station in the Jordanelle area, the Fire District charged additional fees, which it characterized as "lump-sum fees" or "bond buy-in fees." The County originally paid for the new fire station and related equipment, and the Fire District subleased it from the County. In 2002, the Fire District refinanced the sublease through a twenty-year bond.

¶5     In 2008, Highlands brought suit against the County and the Fire District, challenging, among other things, the reasonableness

---

2. Landowners in Wasatch County already paid for "basic fire protection services" through property taxes, but the Fire District determined that the then-remote Jordanelle Reservoir area would require "services in addition to the basic fire protection services" to adequately address increased building density.

3. Before January 6, 2003, Wasatch County was governed by a three-member county commission. It currently consists of a seven-member county council with a manager. *See* Wasatch County Council, http://www.wasatch.utah.gov/Council (last visited July 6, 2015).

of the fire-protection service fees. Other landowners filed similar lawsuits, and the lawsuits were eventually consolidated.

¶6     Late in 2010, the landowners moved for partial summary judgment, asking the court to order a refund of the lump-sum fees and the monthly fees. The trial court entered an order ruling that the lump-sum fees were never authorized by Resolution 99-3 and must be refunded to the landowners. It further determined that while the monthly fees were authorized by Resolution 99-3, the fees did not bear a "reasonable relationship to the actual costs of providing the services." Accordingly, the trial court ordered a refund of the monthly fees as well.

¶7     In 2011, after the trial court ordered that all of the fees be refunded but before the fees were actually refunded, the Fire District used $1,450,000 to pay off the fire station bond completely, eleven years ahead of schedule. The County then conveyed title to the fire station to the Fire District.

¶8     Over the next two years, the trial court determined, among other things, that the County was jointly liable with the Fire District and that the two entities must refund all the fees in full. It also determined that several of the landowners had paid both monthly and lump-sum fees more than four years before filing their lawsuits and were therefore barred from recovering those amounts by the applicable statute of limitations.

ISSUES AND STANDARDS OF REVIEW

¶9     On appeal, the County and the Fire District assert that the trial court erred by granting the landowners' motion for partial summary judgment and ordering a refund of the monthly fees.[4] We

---

4. During oral argument before this court, the County and the Fire District candidly conceded that the lump-sum fees were not

(continued...)

review a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness. *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600.

¶10    The County asserts that the trial court incorrectly determined that the County was jointly liable with the Fire District for the lump-sum fees and the monthly fees. A trial court's interpretation of "precedent, statutes, and the common law are questions of law that we review for correctness." *Ellis v. Estate of Ellis*, 2007 UT 77, ¶ 6, 169 P.3d 441.

¶11    Both the County and the Fire District challenge the trial court's grants of summary judgment in favor of the landowners, the court's awards of attorney fees and expert-witness fees, and the addition of prejudgment interest on the lump-sum fee and monthly fee refunds. As just mentioned, we review a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness. *Orvis*, 2008 UT 2, ¶ 6.

¶12    The landowners filed a cross-appeal, arguing that the trial court erred in concluding that the discovery rule did not toll the statute of limitations for some of the landowners' claims. The applicability of a statute of limitations and the applicability of the discovery rule raise questions of law that we review for correctness. *Colosimo v. Roman Catholic Bishop of Salt Lake City*, 2007 UT 25, ¶ 11, 156 P.3d 806.

¶13    The landowners also appeal the trial court's determination that, under rule 15(c) of the Utah Rules of Civil Procedure, one of the landowners' refund claims did not relate back to the original complaint and was therefore untimely. We review a trial court's

---

4. (...continued)
authorized by Resolution 99-3 and were therefore indefensible. The Fire District's counsel stated, "I knew the lump-sum fees were sort of trying to make up fees for the bond, . . . but I don't think I can defend them here today because they're not within the resolution."

rule 15(c) analysis for correctness.[5] *Gary Porter Constr. v. Fox Constr., Inc.*, 2004 UT App 354, ¶ 31, 101 P.3d 371.

ANALYSIS

A. Reasonableness of the Monthly and Lump-sum Fees

¶14　The County and the Fire District challenge the trial court's determination that the monthly fees were not reasonably related to the cost of the services provided and that therefore they must be refunded.

¶15　Utah law permits special service districts, like the Fire District, to impose "fees or charges for any commodities, services, or facilities provided by the service district." Utah Code Ann. § 17A-2-1320(1)(a) (Lexis 1999).[6] To impose a fee, a district must

---

5. The parties have all raised additional issues. The Fire District claims that the four-year statute of limitations was not the applicable statute; that the monthly fees were, in fact, taxes; that the landowners' claims are barred by equitable estoppel; and that the trial court's interpretation of Resolution 99-3 should only apply prospectively. The County and the Fire District both argue that if fees are refunded, they should be offset by the value of the fire-protection services the landowners have received. Finally, the landowners assert that the trial court erred in awarding attorney fees only against the Fire District and not against the County as well. The way in which we resolve the principal issues in this case renders many of these additional issues irrelevant, or at least limited in their application. Accordingly, we will, as appropriate, either address them in the context of the principal issues or decline to address them at all.

6. Utah Code sections 17A-2-1320, 17A-2-1313, and 17A-1-203 have been either repealed or renumbered. Accordingly, for these

(continued...)

first give proper notice of the proposed fee, hold a public hearing, and then pass a resolution authorizing the fee. *See id*. § 17A-1-203(1). Even with a valid authorizing resolution, however, the fee must still be reasonable. "To be a legitimate fee for service, the amount charged must bear a reasonable relationship to the services provided, the benefits received, or a need created by those who must actually pay the fee." *V-1 Oil Co. v. Utah State Tax Comm'n*, 942 P.2d 906, 911 (Utah 1996), *vacated in part on other grounds*, 942 P.2d 906 (Utah 1997). The Utah Supreme Court has also recognized that the benefits and costs of some municipal services are hard to quantify:

> The nature of the service or benefit provided may also make it difficult or impossible to distribute the services or benefits equally to all who pay the fee. For such a fee to be reasonable, we have directed that it should be fixed so as to be equitable in light of the relative benefits conferred as well as the relative burdens imposed.

*Id*. at 911–12 (internal citation omitted). Additionally, our Supreme Court determined that "fixing the amount of a fee is a legislative act to which we grant great deference." *Id*. at 917.

¶16    Considering the difficultly of fairly assessing fire-protection and related emergency-service fees and the great deference owed to the Fire District in adopting the legislation in question, we cannot agree that the monthly fees were unreasonable. The trial court determined that the monthly fees were unreasonable because the density determination alone did not authorize construction and therefore did not immediately create any additional costs. But the rule of *V-1 Oil* is that the fee must be related to the cost of

---

6. (...continued)
sections only, we cite the version of the code that was in effect at the time the Fire District was created. We otherwise cite the current version of the annotated code.

providing the service *or* to the benefit conferred *or* to the need created by those who pay the fee. *See id.* at 911. The trial court may be correct that the cost of providing fire-protection services to the undeveloped land did not immediately increase. But the benefit conferred on the landowners and the need created by the landowners did increase following the density determinations.

¶17   The benefit conferred upon the landowners was significant. Once the landowners received their density determinations, they had a vested right to increased building density—in the case of Highlands, increasing its ability to develop the land to 376 ERUs. The density determination made the landowners' property instantly more marketable, more amenable to development, and much more valuable. The fact that the area was well provisioned with a nearby fire station paid for with those fees made any potential development subject to lower fire-insurance premiums. The landowners also benefitted in ways that are harder to quantify, such as enjoying increased safety and peace of mind and being able to market those features to prospective purchasers.

¶18   For these benefits conferred upon the landowners, we think that a fixed fee of $14.81 per ERU, while necessarily somewhat arbitrary, is not an obviously unreasonable fee. And we are not alone. Indeed, the Fire District entered into negotiations with the original landowners to balance their desire for increased density with the concurrent need of increased fire-protection services. The result was Resolution 99-3, authorizing the monthly fee. The fact that the original landowners agreed to the monthly fee is further evidence of its reasonableness.

¶19   The fee was also reasonably related to the "need created" by the landowners' aspirations to develop the area. *See id.* The trial court erred in ignoring the "need created," which can admittedly be difficult to quantify, instead focusing only on the cost of providing fire protection and related services. Unlike costs for some kinds of municipal services, which can be calculated after the fact, the need for fire-protection services must be anticipated. It would be wholly unreasonable for the Fire District to have to wait

until construction began and a fire broke out before it could charge any fees for fire-protection services to the area. Instead, the Fire District necessarily had to anticipate the need created by the increased density determinations. It had to build a new fire station and properly staff and equip it. This could not have been done at the very moment that the increased need was fully realized in the form of an inferno consuming actual buildings with actual occupants. Rather, the Fire District wisely treated the inevitability of fires and other emergencies in the area as a need that required action before structures were built and occupied, before a fire broke out, and before emergency services were required. By focusing solely on the cost of the services provided, the trial court failed to appreciate the need created by the increased density allowances. Considering the "great deference" owed to the Fire District in setting the fee in anticipation of future development, we must conclude that the fee is reasonable. *See V-1 Oil*, 942 P.2d at 917.

¶20    The trial court also took exception to the fact that the monthly fee was not "apportioned among properties" according to their level of development. But in *V-1 Oil*, our Supreme Court explicitly recognized the difficulty in distributing some types of services or benefits equally among all who pay the required fee. *Id.* at 911–12. Fire-protection service fees fall into this category. In the most narrow sense, the only true consumers of fire-protection services are those who have a fire. And yet, firefighters do not usually leave a bill for services rendered after they have extinguished a fire. Rather, it is standard for communities—often organized through special service districts—to pay for fire-protection services as a group and in a prospective manner, not individually and on an as-needed basis.[7] In such a situation, our

---

7. Fire-protection services are on a qualitatively different footing from some other municipal services, where the cost–benefit relationship is more obvious and easier to keep in balance. Providing metered culinary water or weekly collection of trash in provided bins come to mind. Citizens who use less water should

(continued...)

Supreme Court has determined that a service fee can still be reasonable if it is "fixed so as to be equitable in light of the relative benefits conferred as well as the relative burdens imposed." *Id*. at 912. In this case, the fee is fixed at $14.81 per ERU. And, as we have previously discussed, this fixed fee is equitable in light of the benefits conferred upon the landowners and in light of the need created by the landowners' increased density determinations, even though it cannot be said with any confidence that $14.75 would be too low or that $14.99 would be too high.

¶21    The landowners contend, however, that even if the fixed amount of the fee is reasonable, it should have been assessed gradually at each stage of development, i.e., at one rate when rough grading begins, at another when vertical construction begins, and at a yet higher rate when an occupancy permit is issued. This may, in fact, have been a fine way to assess the cost of the fire-protection services, but that does not mean that the Fire District's decision to charge a fixed fee beginning with the density determination was unreasonable. It was within the discretion of the Fire District, foreseeing sustained development in a popular recreation area, to provide essential services in anticipation of future needs.

¶22    The landowners received a benefit reasonably related to the monthly fees they paid. The Fire District reasonably assessed its current needs in light of the expectation of future development. Finally, the fixed rate of the monthly fee was reasonable considering the difficulty of apportioning fire-protection costs. Accordingly, we reverse the trial court's decision that the County and the Fire District must refund the monthly fees.

---

7. (...continued)
pay less. Citizens who require two trash bins instead of the usual one should pay more. But all citizens benefit from the ready availability of fire protection whether they ever need the service or not. To shift the cost of providing that service to the comparative handful of people who need a house fire extinguished would be untenable.

¶23 The lump-sum fees, however, are a different matter. Resolution 99-3 never authorized such a charge, and both the County and the Fire District conceded during oral argument that the lump-sum fees are indefensible. We therefore affirm the trial court's ruling that the lump-sum fees are invalid and remand to the trial court to determine the amount that must now be refunded. Unless otherwise stated, our analysis from this point forward will focus on the lump-sum fees—the only fees remaining at issue given our decision upholding the monthly fees.

### B. The County's Joint Liability

¶24 The trial court determined that the County was jointly liable with the Fire District for the refund of fees. The County, however, asserts that the Fire District is a legally separate entity whose actions cannot be imputed to the County.

¶25 Under Utah law, a special service district is a "quasi-municipal corporation" and a "political subdivision of the state" that is "separate and distinct from the county . . . that creates it" and that "may sue and be sued." *See* Utah Code Ann. § 17D-1-103(1) (LexisNexis Supp. 2014); *Tribe v. Salt Lake City Corp.*, 540 P.2d 499, 503 (Utah 1975). As a special service district, then, the Fire District is separate and distinct from the County. Therefore, the Fire District's collection of unauthorized lump-sum fees cannot be attributed to the County. The landowners assert, however, that even if the County and the Fire District are separate entities, the County's control over the Fire District creates vicarious liability. Analogizing to municipal liability for the acts of independent contractors, the landowners argue that if "the municipality retains complete supervision and control over the manner of doing the work in detail or over the employees, it is liable." *See* 18 Eugene McQuillin, *The Law of Municipal Corporations* § 53:77.47 (3d ed. 2013).

¶26 Indeed, by statute, the County Commission or County Council, at all relevant times, acted as the governing board of the

Fire District and in this capacity controlled and had supervisory authority over all of the Fire District's activities. *See* Utah Code Ann. § 17A-2-1313(2) (Lexis 1999). In this specific case, however, the Fire District charged a fee that was not authorized by Resolution 99-3. Furthermore, the County never collected or otherwise received the fees, except in the case of delinquency, as required by statute. *See id.* § 17B-1-902(1)(b) (LexisNexis 2013) (providing that "the past due fees and charges . . . become a lien on the customer's property . . . on a parity with and collectible at the same time and in the same manner as general county taxes"). In this case, we do not see the kind of control that would create vicarious liability between two legally separate and distinct entities, even though they shared a governing board.[8] We therefore reverse

---

8. We note, however, that if a municipality were to intentionally interfere with a special service district's ability to pay a judgment, it could constitute the kind of control that would create vicarious liability, notwithstanding the separate and distinct nature of the two entities. The landowners have pointed out that, after the trial court ordered a refund of the fees but before the refunds were paid, the County Council, acting as the governing board of the Fire District, chose to empty the Fire District's coffers of nearly $1.5 million to pay off the bond for the fire station eleven years early. In fact, the Fire District argues that refunding the fees would be a hardship because the fire-protection fees have already been expended. Our determination in this case that the County is separate and distinct from the Fire District and has not exercised the kind of control that would create vicarious liability does not imply that a county government may shift funds from a special service district to the county in an effort to make the special service district judgment-proof, and thus allow both entities, separate as they may be, to avoid all liability. The record on appeal does not convince us that this happened here. However, upon remand, if the trial court determines that the Fire District is unable to refund the lump-sum fees because of the early bond payoff, the trial court may take appropriate measures, including, if necessary, requiring the

(continued...)

the trial court's determination that the County should be jointly liable for the refund of the fees.[9]

## C. Prejudgment Interest

¶27 The County and the Fire District argue that the trial court erred when it awarded prejudgment interest to the landowners for the refunded fees, set at 10% per year. In general, prejudgment interest "may be recovered where the damage is complete, the amount of the loss is fixed as of a particular time, and the loss is measurable by facts and figures." *Saleh v. Farmers Ins. Exch.*, 2006 UT 20, ¶ 28, 133 P.3d 428. Furthermore, "[w]hen a party proves that its damages were fixed at a particular point in time—even when it does not establish that proof until trial—that party is entitled to the benefit of its money from that time. Prejudgment interest remedies this injury." *AE, Inc. v. Goodyear Tire & Rubber Co.*, 576 F.3d 1050, 1058 (10th Cir. 2009).

¶28 Because of our earlier conclusion that only the lump-sum fees should be refunded, the amount of the refunds will be ascertained by the trial court on remand. This does not mean, however, that the amount of the refunds are not already complete, fixed, and measurable. *See id.* (discussing Utah case law and concluding that "prejudgment interest may be appropriate even if the amount of damages are ascertained at trial").

¶29 The damages resulting from the unauthorized lump-sum fee payments were complete when the landowners paid the fees. The amount of damages were "fixed as of a particular time," i.e., at the moment of payment. *Saleh*, 2006 UT 20, ¶ 28. Finally, the lump-sum

---

8. (...continued)
County to disgorge any savings that may have been realized through the early bond payoff.

9. Because we conclude that the County is not jointly liable, it follows that the landowners are not entitled to an award of attorney fees against the County.

fees are measurable by simple mathematical calculations. *See id*. Accordingly, we affirm the trial court's grant of prejudgment interest but only as it applies to the lump-sum fees, which the Fire District is obligated to refund.[10]

¶30    The County and the Fire District also argue that the 10% annual interest rate was too high and that the interest should be calculated from the date of the trial court's order and not from the date of the landowners' payments. Utah Code section 15-1-1 sets a default interest rate for most contracts at 10% per year. *See* Utah Code Ann. § 15-1-1(2) (LexisNexis 2013). The County argues, however, that the payment of the unauthorized lump-sum fees was more analogous to an overpayment of taxes and that the rate should be "two percentage points above the federal short-term rate," according to Utah Code section 59-1-402(3)(a). The question, then, is whether the lump-sum fees were contractual in nature or more akin to a tax.

¶31    We determine that the lump-sum fees were contractual. We recognize that service fees, unlike taxes, "must bear a reasonable relationship to the services provided, the benefits received, or a need created by those who must actually pay the fee." *V-1 Oil Co. v. Utah State Tax Comm'n*, 942 P.2d 906, 911 (Utah 1996), *vacated in part on reh'g*, 942 P.2d 906 (Utah 1997). This is similar to the quid pro quo aspect of a contract. In its briefing, the Fire District even frames the issue of the lump-sum fees in terms of contract or quasi-contract. First, while the Fire District argues that the monthly fees

---

10. The County and the Fire District argue that the fee refunds should be offset by the value of the fire-protection services the landowners have received. But the lump-sum fees were never authorized and should not be offset by a benefit for which the landowners have already paid through their monthly fees, which we have determined are reasonable, and their property taxes. If the Fire District finds that $14.81 per ERU is insufficient to provide adequate fire-protection services, Resolution 99-3 permits the Fire District to raise the fixed monthly rate as necessary. Therefore, the lump-sum fees should be refunded without any offset.

were, in fact, taxes masquerading as fees, it specifically declines to make the same argument regarding the lump-sum fees. Instead, the Fire District asserts that contract principles or equitable estoppel should have precluded the landowners' claims. The Fire District writes:

> As a result of [the landowners'] promises, statements, and agreements, a bond was issued to fund the construction of a new fire station, and provisions were made to staff it with full-time fire fighters and EMTs, to purchase the necessary equipment, and to operate and maintain the newly constructed station. None of these events would have occurred, but for the consent and agreement of the developers to provide the revenue for the repayment of the bond and reimbursement of the operation and maintenance costs.

According to the Fire District's description, the landowners paid the lump-sum fees or "bond buy-in fees" as part of an agreement that the Fire District would use those funds to build and maintain a fire station in the Jordanelle Reservoir area. This characterization of the fees suggests that they are more analogous to contractual obligations than to taxes. Because the lump-sum fees in this context were more similar to a contract than to a tax, we conclude that the trial court was correct to apply the statutory default interest rate for most contracts, including this one, i.e., 10% per year.

¶32   Additionally, we affirm the trial court's decision to calculate the prejudgment interest from the date on which the landowners paid the lump-sum fees. It is equitable to do so because the moment of payment was the precise moment at which the landowners were deprived of their funds through an admittedly indefensible fee. There is no reason why the Fire District should be allowed to benefit from its own error. Indeed, the Fire District used the unauthorized fees to help pay off the fire station bond eleven years early and thereby greatly reduced the amount of interest it would have otherwise paid on the bond. The most appropriate

resolution is to calculate the prejudgment interest from the moment the lump-sum fees were paid—a task which will be a straightforward calculation once the dates and amounts of the unauthorized payments are established.

¶33 We affirm the trial court's grant of prejudgment interest at 10% per year starting from the day the various landowners paid their lump-sum fees. We remand to the trial court to calculate the prejudgment interest as it applies to the lump-sum fee refunds only.

### D. Attorney Fees

¶34 The Fire District asserts that the trial court erred by awarding attorney fees to Highlands, the original plaintiff in this case, under the private-attorney-general doctrine.

¶35 Generally speaking, under Utah law a party is entitled to an award of its attorney fees only if it is authorized by contract or by statute. *Culbertson v. Board of County Comm'rs*, 2008 UT App 22, ¶ 9, 177 P.3d 621. However, a court may, by exercising its inherent equitable powers, award attorney fees to a party that has acted as a private attorney general for the benefit of the public. *See id*. To determine if a plaintiff is acting as a private attorney general, a court should consider whether (1) the plaintiff has vindicated an "important public policy," (2) the plaintiff's "necessary costs in doing so transcend the individual plaintiff's pecuniary interest to an extent requiring subsidization," and (3) the circumstances are exceptional. *See id*. (citations and internal quotation marks omitted).

¶36 Considering, as we must, only the lump-sum fees, we determine that Highlands has vindicated an important public policy. The Fire District acted beyond its statutory authority in charging an unauthorized fee—not just to Highlands, but to other developers in the Jordanelle Reservoir area. The Fire District asserts that no other developer complained about the unauthorized fees for almost nine years. But if it were not for Highlands originally bringing its lawsuit, the Fire District may well have continued to

charge the invalid fee for years to come. Highlands' efforts have not only spared all developers in the Jordanelle Reservoir area from paying an unlawful fee, but they have also helped the Fire District to comply with the law and act within its statutorily granted authority. These are important public interests that weigh heavily in Highlands' favor.

¶37   We also determine that these are exceptional circumstances. In *Stewart v. Utah Public Service Commission*, 885 P.2d 759 (Utah 1994), a public utility was charging its ratepayers an unlawfully high fee. *See id.* at 783. Some ratepayers challenged the fee in court, and they were opposed by both the public utility and the Utah Public Service Commission. *Id.* at 762. The Utah Supreme Court determined that the circumstances there were exceptional enough to warrant the equitable award of attorney fees under the private-attorney-general doctrine. *Id.* at 783 & n.19.

¶38   The exceptional circumstances in this case are similar to the exceptional circumstances in *Stewart*. Here, the Fire District continued to bill the unauthorized lump-sum fees even after the trial court ordered it to refund the fees to the landowners in November 2010. In its brief, the Fire District argued that the landowners should have been precluded from even challenging the lump-sum fees under a theory of promissory estoppel. It was not until oral argument before this court that the Fire District definitively conceded that the lump-sum fees were unauthorized and indefensible. As a result, Highlands has had to undertake sustained, determined efforts to vindicate the right to a refund of the lump-sum fees. We conclude that these circumstances are exceptional and weigh in favor of awarding attorney fees to Highlands.

¶39   Remand for further consideration of this issue is, however, necessary. In general, attorney fees may be granted in cases of "partial success," *see Stacey Props. v. Wixen*, 766 P.2d 1080, 1085 (Utah Ct. App. 1988) (dealing with contractual attorney fees), but care must be taken to "differentiate between the time spent on the successful claim and the time spent on unsuccessful claims," *see*

*Graco Fishing & Rental Tools, Inc. v. Ironwood Exploration, Inc.*, 766 P.2d 1074, 1080 (Utah 1988). Care will have to be used in identifying the attorney fees that are properly allocable to securing a refund of the lump-sum fees. We have determined that Highlands and the other developers must pay the legitimate monthly service fee, so Highlands will have to bear its own attorney fees insofar as allocable to that and the other issues on which it was not successful.

¶40     Once the trial court has determined the amount of attorney fees Highlands incurred in vindicating its right to a refund of the lump-sum fees, it can undertake the analysis required by the second *Culbertson* factor, comparing the fees incurred to the amount recovered so as to gauge whether "subsidization" is in order. *See* 2008 UT App 22, ¶ 9. The trial court should also calculate the attorney fees reasonably incurred by Highlands on appeal, insofar as allocable to the lump-sum fee issue on which it prevailed.[11] If the "necessary costs of litigation . . . transcend [Highlands'] pecuniary interest" to a degree that warrants attorney

---

11. Generally, when a party who received attorney fees below pursuant to a contract or a statute prevails on appeal, the party is also entitled to reasonable attorney fees incurred on appeal. *See Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998). In this case, however, we are reviewing the equitable award of attorney fees under the private-attorney-general doctrine. This kind of equitable relief is an inherent power of the court, *see Culbertson v. Board of County Comm'rs*, 2008 UT App 22, ¶ 9, 177 P.3d 621, and can, under certain circumstances, be awarded on appeal even if not raised below, *see Stewart v. Utah Pub. Serv. Comm'n*, 885 P.2d 759, 781, 783 (Utah 1994). Therefore, the question of who has prevailed on the overall appeal is largely irrelevant to the award of attorney fees in this case. Instead, the decision to award attorney fees incurred on appeal under the private-attorney-general doctrine should be based on the same three factors described in *Culbertson*, 2008 UT App 22, ¶ 9, i.e., (1) vindication of an important public policy, (2) necessary costs of litigation that transcend pecuniary interest, and (3) exceptional circumstances.

fees under the private-attorney-general doctrine, the trial court should award them.[12] *See Culbertson v. Board of County Comm'rs*, 2008 UT App 22, ¶ 9, 177 P.3d 621.

## E. The Discovery Rule

¶41   Mountain Resort Land Company, LLC, one of the landowners, argues in a cross-appeal that the trial court incorrectly denied its claim for a lump-sum fee refund as untimely.[13] Mountain Resort asserts that the equitable discovery rule should have tolled the four-year statute of limitations.[14]

---

12. We caution, however, that the comparison of the necessary costs to the pecuniary interest is only for the purpose of determining whether attorney fees will be granted under the private-attorney-general doctrine and should not be used as a basis for setting the amount of attorney fees. In determining the amount of awardable fees, it is generally a mistake of law to adjust the amount of otherwise reasonable attorney fees based on the amount of the recovery. *See Dixie State Bank v. Bracken*, 764 P.2d 985, 991 (Utah 1988).

13. Pigeonhole Development, LLC, and Mustang Development, LLC, join Mountain Resort in this cross-appeal. However, Pigeonhole's and Mustang's claims involve only monthly fees. Because we have already determined that the monthly fees were valid, we do not address the discovery rule as it applies to their claims.

14. The Fire District also challenges the trial court's determination that a four-year statute of limitations applied. Although its argument is not entirely clear, the Fire District appears to argue that either a thirty-day or a six-month statute of limitations should apply to all of the service fees, including the lump-sum fees, because the fees were not service charges but "availability fees" that are "more akin to a generally applicable tax." We disagree. The Fire District admits that there is no resolution authorizing the

(continued...)

¶42    Before determining whether the equitable discovery rule applies, "the plaintiff must make an initial showing that he did not know nor should have reasonably known the facts underlying the cause of action in time to reasonably comply with the limitations period." *Berneau v. Martino*, 2009 UT 87, ¶ 23, 223 P.3d 1128. Knowledge of the underlying facts may be actual or constructive. *Id*. After the initial showing,

> [f]or the equitable discovery rule to apply, one of two situations must exist: (1) "a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct" or (2) "the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant has prevented the discovery of the cause of action."

*Id*. (quoting *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 25, 108 P.3d 741).

¶43    In this case, it appears that Mountain Resort has made its initial showing that it did not reasonably know that the lump-sum fees were invalid until it learned of Highlands' lawsuit against the

---

14. (...continued)
lump-sum fees, but the only possible rationale for the lump-sum fees would have been pursuant to Resolution 99-3. The whole purpose of the resolution was to set a "fire protection service charge." Resolution 99-3 also cites Utah Code section 17A-2-1320, titled "Fees or charges," as its authority to assess the service fees. We readily conclude that the lump-sum fees were service fees, not taxes, and that the trial court correctly applied a four-year statute of limitations. *See Ponderosa One Ltd. P'ship v. Salt Lake City Suburban Sanitary Dist.*, 738 P.2d 635, 637–38 (Utah 1987) (per curiam) (determining that a sewer service charge was a service fee, not a tax or assessment, and therefore subject to a four-year statute of limitations).

Fire District and the County. Nothing in the record indicates that Mountain Resort had actual notice that the fees were invalid until after Highlands began litigation in 2008. Nor did Resolution 99-3 provide Mountain Resort with constructive knowledge of the underlying fact, i.e., that there was no authorizing resolution or legislative act to justify the lump-sum fees. While Resolution 99-3 explicitly authorized monthly fees, it is silent on the validity or invalidity of the lump-sum fees. From all that appears, however, Mountain Resort could have reasonably assumed that the lump-sum fees were authorized by some other resolution.

¶44    The Fire District argues that we should indulge the general presumption that "all men . . . know the law," *see Board of Educ. v. Jeppson*, 280 P. 1065, 1069 (Utah 1929), and that therefore Mountain Resort should have known that the fees were invalid. Assuming, however, that there was a law that would indicate the underlying fact—that the lump-sum fees lacked statutory support—this presumption would also apply to the Fire District. Under the same reasoning, we would presume that the Fire District knew the lump-sum fees were illegal and charged the landowners anyway. We are disinclined to indulge a presumption that would cast a governmental entity's actions in such a poor light. Indeed, the Fire District defended itself against such an implication before the trial court, arguing that "it was not until Highlands challenged the fees and clearly stated its argument in 2010 that the Fire District was put on notice that the [lump-sum] fees may not be collectible." Therefore, we conclude that Resolution 99-3's silence on the subject of lump-sum service fees did not provide constructive notice of the underlying invalidity of the fees to either the Fire District or Mountain Resort. Accordingly, we determine that Mountain Resort has made its initial showing that it did not know, nor should it have known, that the lump-sum fees lacked statutory support until it learned of Highlands' lawsuit.[15]

---

15. Public policy concerns further bolster this conclusion. Utah law has favored policies that encourage landowners to promptly pay their service charges and taxes. *See Edwards v. Powder Mountain*

(continued...)

¶45    We now consider whether the equitable discovery rule is applicable. Mountain Resort does not appear to claim that the Fire District intentionally misled it or concealed information from it regarding the validity of the lump-sum fees. *See Berneau*, 2009 UT 87, ¶ 23. Therefore, we must determine whether there are "exceptional circumstances" in which "the application of the general rule would be irrational or unjust." *See id*. (citation and internal quotation marks omitted). In determining whether exceptional circumstances exist, we weigh the "hardship the statute of limitations would impose on the plaintiff in the circumstances of that case" against "any prejudice to the defendant from difficulties of proof caused by the passage of time." *Myers v. McDonald*, 635 P.2d 84, 87 (Utah 1981).

¶46    We have already determined, in the context of attorney fees, that these circumstances are exceptional. *See supra* ¶¶ 37–38. In weighing whether the "hardship the statute of limitations would impose on the plaintiff" outweighs "any prejudice to the defendant from difficulties of proof caused by the passage of time," *Myers*, 635 P.2d at 87, we have no doubt that the lump-sum fees are indefensible and that but for the statute of limitations, Mountain Resort would be entitled to a refund. Because the statute of limitations would bar Mountain Resort from an otherwise uncontested recovery, we conclude that the statute imposes a substantial hardship. On the other side of the scale, we consider

---

15. (...continued)
*Water & Sewer*, 2009 UT App 185, ¶¶ 17–19, 214 P.3d 120 (determining that delinquent water and sewer fees must be paid before the plaintiff has standing to challenge their validity). *Cf.* Utah Code Ann. § 59-2-1327 (LexisNexis 2011) (requiring a person who claims that a property tax is unlawful to first pay the tax under protest and later challenge the validity of the tax in court). Indeed, absent actual or constructive notice that a service fee is invalid, a customer is entitled to assume the validity of the service fee and pay it in a timely fashion. In this case, Mountain Resort should not be penalized for doing just that.

how the passage of time has increased the difficulty of the Fire District's defense of the lump-sum fees. We conclude that the passage of time has not prejudiced the Fire District in the least. Indeed, it has conceded that the lump-sum fees are indefensible. No evidence or legal defense was available to the Fire District that is now unavailable as a result of the passage of time. Considering the substantial hardship imposed on Mountain Resort and the lack of prejudice resulting to the Fire District, we conclude that these are exceptional circumstances that warrant the application of the discovery rule to moderate the harsh result of applying the statute of limitations. We reverse the trial court's decision not to apply the discovery rule to toll the statute of limitations but only as it applies to Mountain Resort's claim for a refund of the lump-sum fees it paid.[16]

### F. Relation Back of Claims

¶47    Pigeonhole Development, LLC, one of the cross-appellants, argues that the trial court erred in determining that one of its claims did not relate back to its original complaint and was, for that reason, untimely. After Pigeonhole purchased the right to bring claims on behalf of Prime West Jordanelle, LLC, it filed its first

---

16. In balancing the equities, we also recognize that the Fire District rightly deserves the predictability of a clearly applicable statute of limitations. Unrestricted exemptions from the statute of limitations under circumstances similar to these may encourage ongoing litigation in a way that is inequitable toward the Fire District. Fortunately, this should not be the case here. We note that the trial court's decision on November 10, 2010, ordering a refund of the lump-sum fees, provided constructive notice, if not actual notice, to all potential claimants. As of November 10, 2014, the four-year statute of limitations has run for any lump-sum fee payments that occurred before November 10, 2010, even with the application of the discovery rule. As a practical matter, the class of plaintiffs that could benefit from a tolling of the statute of limitations based on the discovery rule has now closed. The Fire District can now plan, budget, and fix its fees accordingly.

complaint against the Fire District and the County on November 8, 2010. More than a year later, on November 22, 2011, Pigeonhole purchased additional refund claims from PWJ Holdings, LLC, through PWJ's bankruptcy trustee. Pigeonhole then attempted to amend its complaint to include its claims obtained from PWJ. However, applying rule 15(c) of the Utah Rules of Civil Procedure, the trial court concluded that "Pigeonhole as successor in interest to PWJ's claims does not share an identity of interest with Pigeonhole as successor in interest to the claims of Prime West." It therefore denied the PWJ claims as untimely.

¶48    Rule 15(c) of the Utah Rules of Civil Procedure provides:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

Utah R. Civ. P. 15(c). Generally, rule 15(c) does not apply to an amendment that "substitutes or adds new parties for those brought before the court by the original pleadings" because it "would amount to the assertion of a new cause of action." *Doxey-Layton Co. v. Clark*, 548 P.2d 902, 906 (Utah 1976). However, under limited circumstances, a new party may relate its claim back to the original complaint in the event of a "misnomer case" or if there is a "true identity of interest" between the new party and the original party. *Wright v. PK Transp.*, 2014 UT App 93, ¶ 5, 325 P.3d 894 (citation and internal quotation marks omitted).

¶49    A true identity of interest exists if (1) "'the amended pleading alleged only claims that arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading'" and (2) the defendant had received actual or constructive notice that the new plaintiff "'would have been a proper party to the original pleading such that no prejudice would result'" from preventing the defendant from using a statute-of-

limitations defense that otherwise would have been available. *Ottens v. McNeil*, 2010 UT App 237, ¶ 43, 239 P.3d 308 (quoting *Gary Porter Constr. v. Fox Constr., Inc.*, 2004 UT App 354, ¶ 40, 101 P.3d 371) (applying the identity-of-interest test to a plaintiff who sought to add an additional defendant). *See Doxey-Layton*, 548 P.2d at 906 (explaining that the identity-of-interest exception applies to "both plaintiff and defendant").

¶50   On cross-appeal, Pigeonhole contends that its attempt to amend the complaint to add the PWJ claims did not add a new party. After purchasing the claims from Prime West and PWJ, Pigeonhole argues that it became the only entity with a right to pursue those claims. *See Applied Med. Techs., Inc. v. Eames*, 2002 UT 18, ¶ 17, 44 P.3d 699 (holding that the sale of a claim "cuts off the former plaintiff's right to pursue those claims"). This is true as concerns an agreement between parties to sell a claim. But as concerns the parties' standing in court, we consider plaintiffs who have purchased their claims to have "step[ped] into the shoes of the former plaintiff." *See id*. Pigeonhole has, in effect, purchased the right to step into the shoes of Prime West and PWJ. Therefore, Pigeonhole's effort to amend its complaint to add the PWJ claims does attempt to add a new party. Pigeonhole's PWJ claims are therefore time barred unless Pigeonhole can show that PWJ has a true identity of interest with Prime West independent of their connection via Pigeonhole.

¶51   We now examine whether PWJ's claims "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." *See Ottens,* 2010 UT App 237, ¶ 43 (citation and internal quotation marks omitted). We conclude that they did not. The relevant conduct, transaction, or occurrence that Pigeonhole originally complained about was the Fire District's requirement that Prime West pay "Lump Sum Fire Service Fees over a time period spanning several years." After this conduct occurred, PWJ purchased the property from Prime West on June 1, 2007. The Fire District then also required PWJ to pay fees, which it

did on September 12, 2007.[17] As a result, the PWJ claims concern a separate act of misconduct directed against a separate plaintiff.

¶52 Allegations of "new or different acts of misconduct" amount to new claims that cannot relate back to the original complaint. *Yearsley v. Jensen*, 798 P.2d 1127, 1129 (Utah 1990) (denying a motion to amend because it alleged "new and different misconduct"); *Behrens v. Raleigh Hills Hosp., Inc.*, 675 P.2d 1179, 1183 (Utah 1983) (allowing an amended pleading because the amendment relied on a different legal characterization of the offense but did not refer to "new or different acts of misconduct"). Because Pigeonhole's PWJ claims allege a new act of misconduct, they fail the first element of the identity-of-interest test. It follows that Pigeonhole also fails to meet the requirements of rule 15(c) and that the trial court ruled correctly in denying Pigeonhole's motion to amend.

CONCLUSION

¶53 We conclude that the monthly fee of $14.81 per ERU is a reasonable fee and that the Fire District can charge the fee from the moment the County grants a density determination. Accordingly, we reverse the trial court's decision to the contrary.

¶54 We affirm the trial court's ruling that the lump-sum fees are invalid. We remand to the trial court to determine exactly which fees were lump-sum fees that must now be refunded.

¶55 Because it is legally separate from the Fire District, the County is not jointly liable to refund the lump-sum fees, attorney

---

17. It is not clear from the briefing or the record before us whether the PWJ claims are for the legitimate monthly fees authorized by Resolution 99-3 or for the invalid lump-sum fees. In the interest of conclusively resolving all issues, we will continue with our analysis on the assumption that at least some of the PWJ claims involve lump-sum fees.

fees, or any other judgment or obligation for which the Fire District is liable in connection with this case. We reverse the trial court's determination that the County was jointly liable.

¶56 We affirm the trial court's grant of prejudgment interest at 10% per year starting from the moment each landowner paid a lump-sum fee. We remand to the trial court to calculate the prejudgment interest as it applies to the lump-sum fee refund only.

¶57 We mostly affirm the trial court's determination to award Highlands its attorney fees. We remand, however, for the trial court to determine which of Highlands' attorney fees, below and on appeal, are allocable to the lump-sum fee issue and to reassess the amount of those costs versus the amount recovered for the purposes of applying the private-attorney-general doctrine.

¶58 We reverse the trial court's decision not to apply the discovery rule to toll the statute of limitations, but only insofar as it concerns Mountain Resort's claim for a refund of its lump-sum fees.

¶59 Finally, because Pigeonhole's proposed amendment to its original complaint alleges a new act of misconduct directed against a new party, it does not relate back to its original complaint. We therefore affirm the trial court's determination that Pigeonhole's PWJ claims are untimely.

¶60 With the guidance offered in this opinion, the trial court may now fully resolve this conflict, including determining appropriate fees and costs.[18]

———————

18. All parties agree that the trial court abused its discretion in awarding the landowners' expert-witness fees in excess of the statutory rate. Upon remand, if the trial court still determines that an award of these fees is appropriate, it must adhere to the statutory rate.