2018 UT App 41

# THE UTAH COURT OF APPEALS

THE FRUGAL FLAMINGO QUICK STOP,
Appellant,
*v.*
FARM BUREAU MUTUAL INSURANCE COMPANY,
Appellee.

Opinion
No. 20160540-CA
Filed March 22, 2018

Second District Court, Ogden Department
The Honorable Michael D. DiReda
No. 110908653

Brian E. Arnold, Attorney for Appellant

Paul M. Belnap and Nicholas E. Dudoich, Attorneys
for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which JUDGES
GREGORY K. ORME and DIANA HAGEN concurred.

HARRIS, Judge:

¶1     In this case, we are asked to determine whether the district court properly denied a convenience store's motion to amend its complaint to add claims against its insurance company. The district court denied the motion to amend after concluding that the new claims would be time-barred. The convenience store argues on appeal that the "relation back" doctrine operates to render its new claims timely. We disagree and affirm.

## BACKGROUND

¶2     Beginning in 2010, and continuing periodically for some fourteen months, an employee (Employee) allegedly stole cash

and merchandise from his employer, The Frugal Flamingo Quick Stop (Store). At the time, Store was insured by Farm Bureau Mutual Insurance Company (Insurance Company) under a policy that included coverage for "employee dishonesty." Pursuant to the terms of that policy, Insurance Company was obligated to pay up to $5,000 "for loss or damage in any one occurrence" of employee dishonesty.

¶3     On November 10, 2011, Store's owner (Owner) notified Insurance Company that Store had suffered over $121,000 in damages from Employee's repeated thefts. Just five days later, on November 15, 2011, Insurance Company delivered to Owner a check for $5,000, apparently based on Insurance Company's assumption that Employee's thefts were all part of one "occurrence" and that $5,000 was the entire policy limit available to Store. The record establishes that Owner received the check at some point in November 2011, but it does not establish what day he received the check or whether he negotiated it. However, it is undisputed that Insurance Company delivered the check to Owner at some point during November 2011.

¶4     A few weeks later, on December 7, 2011, Store filed this lawsuit. In its complaint, Store named only one defendant—Employee—and stated claims against Employee for conversion, fraud, and civil conspiracy. At the time, Store did not allege any claims against Insurance Company, or attempt to make Insurance Company a party to the case. For the next two years, the case sat dormant.

¶5     Finally, on January 27, 2014, Store filed a motion asking the district court to join Insurance Company as a party to the case. In support of its motion, Store asserted that Insurance Company might be entitled to indemnification and, therefore, Insurance Company should be made a party to the case in order to "preserve its rights against" Employee. At that time, Store had still not stated any claims against Insurance Company, and did not by this motion seek to add any such claims. Store certified that it mailed a copy of its motion to join Insurance Company as a party to Employee's counsel, but does not claim to have mailed

the motion to Insurance Company itself. The district court took no immediate action on this unusual motion and, for more than a year, the case again sat dormant.

¶6      In June 2015, at a pre-trial conference, Store presented the district court with an "Agreement to Judgment and Settlement," which indicated that Employee had agreed to the entry of a judgment against him and in favor of Store in the amount of $233,421.14.[1] A few weeks later, in August 2015, Store finally submitted for decision its January 2014 motion to join Insurance Company as a party, which motion had not drawn any opposition. This time, Store certified that it had mailed a copy of the request to submit not only to Employee, but also to Insurance Company's registered agent. On August 31, 2015, the district court granted Store's apparently unopposed motion. On September 23, 2015, Store served Insurance Company with (1) a copy of the district court's August 31, 2015 order joining it as a party and (2) a copy of Store's original December 7, 2011 complaint against Employee, which contained no claims against Insurance Company.

¶7      On December 11, 2015, Insurance Company filed a motion to dismiss, pointing out that Store's complaint did not state any claims against Insurance Company. In response, on January 11, 2016, Store finally moved for leave to amend its complaint to state such claims, and attached a proposed amended complaint containing causes of action against Insurance Company for breach of contract, breach of the covenant of good faith and fair dealing, and bad faith, asserting generally that Insurance

---

1. This amount is nearly twice the amount Store sought from Employee in its original complaint. At a subsequent hearing, counsel for Store explained that "this is an ongoing case" against Employee in which Store had spent significant time "trying to ascertain the full scope of the thefts." Apparently, by the time Employee agreed to the judgment, Store had determined the extent of the thefts was greater than it initially thought.

Company had improperly denied and/or mishandled Store's insurance claim for reimbursement related to Employee's thefts. Insurance Company opposed amendment, arguing, among other things, that Store's new claims against it were barred by the applicable statute of limitations.

¶8 After briefing and oral argument, the district court noted that the operative complaint stated no claims against Insurance Company, and further determined that the new claims in Store's proposed amended complaint accrued in November 2011, when Insurance Company delivered the $5,000 check to Owner. The district court also determined that Store's motion to amend was untimely and that it had no justification in waiting so long to file its motion to amend. Based on these determinations, the district court granted Insurance Company's motion to dismiss the original complaint (due to the absence of any claims against Insurance Company), and denied Store's motion to amend, both because it considered any amendment futile (due to the fact that the new claims were time-barred) and because it concluded that the motion to amend was neither timely nor justified.

ISSUES AND STANDARDS OF REVIEW

¶9 Store now appeals, and asks us to review the district court's decision to deny its motion for leave to amend.[2] As

---

2. In the first section of its opening brief on appeal, in a section heading, Store also asserted that the district court "improperly granted [Insurance Company's] motion to dismiss." However, in the body of its brief, it never mounts any serious argument on this point, and specifically never attempts to explain why dismissal of a complaint that failed to state any claim whatsoever against Insurance Company was improper. Instead, Store devotes the entirety of the body of its brief to argument about the district court's decision to deny its motion for leave to amend. Accordingly, we treat Store's appeal as though it raised

(continued…)

noted, the district court denied that motion on two separate grounds: (1) because allowing amendment would have been futile due to the fact that the new claims were time-barred, and (2) because the motion to amend was neither timely nor justified. Store takes issue with both of the district court's grounds for denying its motion.

¶10    Ordinarily, we review the district court's conclusion regarding the futility of amendment for correctness, because the futility question is ultimately governed by the same standards that govern the granting of a motion to dismiss. *See Nelson v. Target Corp.*, 2014 UT App 205, ¶ 12, 334 P.3d 1010. Here, however, we apply a different standard, because the argument Store mounts on appeal in hopes of persuading us that the district court erred was not raised below. Specifically, Store argues that its new claims against Insurance Company are not time-barred, because those claims "relate back" to its original complaint against Employee. Store concedes that the relation back issue was unpreserved for appellate review, and therefore invites us to review this issue for plain error.[3] In order to

---

(…continued)

just one issue—denial of the motion to amend—and we consider any argument about the granting of the motion to dismiss to have been inadequately briefed. *See* Utah R. App. P. 24(a)(8).

3. Our supreme court recently noted the "ongoing debate about the propriety of civil plain error review," but did not take the opportunity to resolve that debate for purposes of Utah law. *See Utah Stream Access Coal. v. Orange St. Dev.*, 2017 UT 82, ¶ 14 n.2. We decline to engage in that debate here, however, chiefly because Insurance Company does not ask us to—indeed, Insurance Company appears to assume the propriety of plain error review under the circumstances presented here. Utah appellate courts, including our supreme court, have previously applied plain error review in civil cases in which neither party challenges its application, *see, e.g., Hill v. Estate of Allred*, 2009 UT

(continued…)

demonstrate that the district court committed plain error, Store must establish that (1) an error exists, (2) the error should have been obvious to the district court, and (3) the error is harmful. *State v. Johnson*, 2017 UT 76, ¶ 20. Unless all three of these elements are met, "plain error is not established." *Id.* (citation and internal quotation marks omitted).

¶11 Store's second argument was raised below, and therefore we review that issue as we would ordinarily do. We review for abuse of discretion the district court's determination that Store's motion to amend was neither timely nor justified, and therefore subject to denial on that basis. *Lewis v. Nelson*, 2017 UT App 230, ¶ 9, 409 P.3d 149.

ANALYSIS

A

¶12 Store first asserts that the district court plainly erred by not considering the "relation back" doctrine when it determined that the claims raised in Store's proposed amended complaint were barred by the applicable statute of limitations. We find this argument unpersuasive.

¶13 Store does not challenge the district court's conclusion that the claims it tried to bring against Insurance Company—for breach of contract and for bad faith—accrued in November 2011, when Insurance Company delivered the $5,000 check to Owner. Likewise, Store does not challenge the district court's conclusion that those claims are subject to a three-year statute of limitations, because actions based on written insurance policies must be

---

(…continued)
28, ¶¶ 30–31, 216 P.3d 929; *Danneman v. Danneman*, 2012 UT App 249, ¶ 10 & n.5, 286 P.3d 309, and we do so here without opining on the propriety of such review.

"commenced within three years after the inception of the loss." *See* Utah Code Ann. § 31A-21-313(1)(a) (LexisNexis 2017). Store therefore concedes that, in the absence of some doctrine tolling or extending the statute of limitations, the period within which Store could have brought its claims against Insurance Company expired in November 2014, more than a year prior to the date on which Store finally attempted to bring claims against Insurance Company. Now, for the first time on appeal, Store claims that the "relation back" doctrine extended the time for filing its amended complaint.

¶14 Rule 15 of the Utah Rules of Civil Procedure provided, at the time the motion to amend was filed,[4] that an amended pleading would "relate back" to the filing of the original pleading if it "arose out of the conduct, transaction, or

---

4. Effective November 1, 2016, rule 15(c) of the Utah Rules of Civil Procedure was substantively amended and significantly lengthened. The advisory committee note regarding the amendment states that the amendment was intended to "adopt the approach of Federal Rule 15(c) regarding the relation back of an amended pleading when the amended pleading adds a new party." *See* Utah R. Civ. P. 15 advisory committee's note to 2016 amendment. Store cites the version of the rule in effect at the time of the district court's decision, and Insurance Company appears to cite the current version of the rule. Neither side makes any argument about which version of the rule ought to apply here, or about whether application of the current rule would alter the analysis in any meaningful way. We apply the version of the rule in effect at the time Store's motion to amend was filed, because "[m]atters of procedure are governed by the law in effect at the time of 'the underlying procedural act.'" *Howick v. Salt Lake City Corp.*, 2013 UT App 218, ¶ 38, 310 P.3d 1220 (quoting *State v. Clark*, 2011 UT 23, ¶ 14, 251 P.3d 829). We express no opinion as to whether the outcome or analysis of this case would have been different had we applied the current version of the rule.

occurrence set forth . . . in the original pleading." *See* Utah R. Civ. P. 15(c) (2014). The rule itself makes no mention of the possibility of adding new parties by way of the "relation back" doctrine, and the doctrine is therefore "typically limited to" situations where a party seeks to add new claims against an existing party. *See Ottens v. McNeil*, 2010 UT App 237, ¶ 42, 239 P.3d 308; *see also Doxey-Layton Co. v. Clark*, 548 P.2d 902, 906 (Utah 1976) (stating that the "relation back" doctrine will generally "not apply to an amendment which substitutes or adds new parties," because "such would amount to the assertion of a new cause of action, and if such were allowed to relate back to the filing of the complaint, the purpose of a statute of limitation would be defeated").

¶15 Under certain limited circumstances, however, our case law interprets rule 15(c) to allow claims against new parties to "relate back" to the filing of the original complaint. Specifically, "Utah courts have allowed the relation back of amendments to complaints incorporating newly named parties in two types of cases: (1) in so called 'misnomer cases,' and (2) [in cases] where there is a true 'identity of interest'" between the new party and an existing party. *Ottens*, 2010 UT App 237, ¶ 43 (citation and internal quotation marks omitted). Store does not claim that the circumstances of this case involve any sort of "misnomer," but it does assert that Insurance Company shares an "identity of interest" with Employee.

¶16 In order to prevail on such an argument, Store must establish both (1) that its "amended pleading allege[s] only claims that arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading," and (2) that Insurance Company, as the party to be added by the amendment, "received (actual or constructive) notice that it would have been a proper party to the original pleading such that no prejudice would result from preventing [Insurance Company] from using a statute of limitations defense that otherwise would have been available." *See id.* (first alteration in

original) (citation and internal quotation marks omitted). On the record before us, Store is unable to establish either element.


1

¶17  The new claims in Store's proposed amended complaint do not arise out of the same "conduct, transaction, or occurrence" as the claims set forth in Store's original complaint. The original complaint stated claims—for conversion and fraud—only against Employee related to Employee's actions in stealing cash and merchandise from Store in 2010 and early 2011. Store's claims in the proposed amended complaint, in contrast, accuse Insurance Company of breaching the insurance contract entered into between Store and Insurance Company. Store alleges that the actions constituting breach occurred in the months following Employee's thefts, and specifically accuses Insurance Company of mishandling the claims process related to Store's claim for insurance coverage for Employee's thefts.

¶18  The "conduct" that forms the basis for Store's claims in its original complaint is Employee's acts of theft. The "conduct" that forms the basis for Store's claims in its amended complaint is Insurance Company's post-theft denial and/or mishandling of insurance claims. In our view, these are completely different "transactions" and "occurrences," involving events that took place at different times, in different places, and involving different actors. Certainly, there is some connection between the two sets of events—there would have been no reason for Store to even make its insurance claim if Employee had not committed theft. But we simply cannot conclude that an insurance company's coverage decision is part of the same "conduct, transaction, or occurrence" as the underlying event that triggers the coverage inquiry. *See* Utah R. Civ. P. 15(c); *see also, e.g., Highlands at Jordanelle, LLC v. Wasatch County*, 2015 UT App 173, ¶¶ 51–52, 355 P.3d 1047 (concluding that "[a]llegations of new or different acts of misconduct amount to new claims that cannot relate back to the original complaint" (citation and internal

quotation marks omitted)). Accordingly, Store cannot meet the requirements of the first element of the "identity of interest" test.

2

¶19   And Store cannot meet the requirements of the second element either, because Insurance Company did not ever receive adequate notice—actual or constructive—of Store's potential claims against it before the expiration of the limitations period. On this record, there is no evidence that Insurance Company received actual notice of Store's affirmative claims against it until January 2016, when Store filed its motion to amend. Moreover, there is no evidence that Insurance Company even had notice of Store's lawsuit against Employee—let alone any claims against Insurance Company—until August or September 2015, when Store mailed to Insurance Company a copy of Store's efforts to join Insurance Company as a party. Indeed, Store does not claim that Insurance Company had actual notice.

¶20   Store does claim, however, that Insurance Company had constructive notice of its claims, due to the fact that Store had submitted "a claim for reimbursement" to Insurance Company regarding Employee's thefts, which claim it asserts was "subsequently denied." We find this argument wholly unpersuasive. Insurance Company does not dispute that Store made an insurance claim; indeed, Insurance Company delivered to Owner a $5,000 check on that claim. There is no indication in the record that Store—at least not until January 2016—expressed to Insurance Company any dissatisfaction with the manner in which Insurance Company had handled the claim. And even if such evidence existed (say, in the form of a demand letter), such evidence, standing alone, would ordinarily not be enough to invoke the "relation back" doctrine to excuse Store from the obligations of the applicable statute of limitations.

¶21   Another way in which a movant can establish constructive notice is by "proving that the original and new party share the same interest concerning the litigation, including

their legal defenses and positions such that notice of the action against one serves to provide notice of the action to the other." *Ottens*, 2010 UT App 237, ¶ 45 (citations and internal quotation marks omitted). It is unclear from Store's brief whether Store intends to make this argument, but we find any such argument meritless on the facts of this case. Employee and Insurance Company did not share the same interest in this litigation, and did not share the same claims and defenses. Indeed, as noted above, the claims against Employee did not even arise out of the same "conduct, transaction, or occurrence" as the proposed claims against Insurance Company. To prove its claims against Employee, Store would have had to prove that there had been a series of thefts by Employee. To prove its claims against Insurance Company, Store would have had to demonstrate a breach of a written insurance contract. Employee's defenses of the claims against him would have been different, in the posture of this case, from the defenses Insurance Company would have likely mounted against the claims stated against it. Thus, Employee and Insurance Company simply did not "share the same interest concerning the litigation." *See id.*; *see also Penrose v. Ross*, 2003 UT App 157, ¶ 19, 71 P.3d 631 (concluding that a motorist could not avail herself of the "relation back" doctrine when she initially sued a son's father rather than the son because the father's defense would have been "that he was not negligent or liable because he was not the driver" and the son's defense would have "focuse[d] on the running of the statute of limitations").

¶22 Accordingly, because Store cannot establish either of the necessary elements, Store's proposed amended complaint did not relate back to its original complaint. The district court did not err by failing to apply the "relation back" doctrine to the facts of this case, let alone commit a plain or obvious error.

B

¶23 Next, Store argues that, even if the "relation back" doctrine does not apply, the district court nevertheless erred in

denying its motion to amend. This argument fails for two reasons. First, without application of the "relation back" doctrine, Store's claims against Insurance Company are time-barred, and the district court correctly determined that any amendment to add such claims would be futile. *See Shah v. Intermountain Health Care, Inc.*, 2013 UT App 261, ¶ 9, 314 P.3d 1079 (observing that a court may deny a motion to amend if the proposed amendment would not withstand a motion to dismiss). Second, we see no error or infirmity in the district court's alternative ruling that the motion to amend should have been denied in any event, because the motion was not timely (having been brought more than four years after the case was filed, and after the original claims against Employee had already been resolved) and because Store had no good justification for failing to bring the claims earlier (given that Store knew all of the relevant facts about its insurance claim allegedly having been denied and/or mishandled as early as 2011). Therefore, the district court did not abuse its discretion in denying Store's motion for leave to amend.

¶24   Affirmed.

———————